STATE OF NEBRASKA, APPELLEE, V.
VICTOR B. PUTZ, APPELLANT.
650 N.W.2d 486

Filed August 20, 2002. No. A-01-777.

James Martin Davis, of Davis & Finley Law Offices, for appellant.

Don Stenberg, Attorney General, and Martin W. Swanson for appellee.

HANNON, SIEVERS, and MOORE, Judges.

HANNON, Judge.

## INTRODUCTION

On the basis of one event, Victor B. Putz was convicted of first degree sexual assault (count I) and sexual assault of a child (count II), and he was sentenced to concurrent terms of imprisonment of 2 to 6 years on count I and 1 to 2 years on count II. Putz appeals, alleging the court erred in allowing him to be convicted of two crimes for one act, in excluding testimony that the victim made inconsistent statements and recantations, and in instructing the jurors that proof beyond a reasonable doubt is proof that leaves them " 'firmly convinced' " of Putz' guilt, but that if they thought there was a " 'real possibility' " he was not guilty, they should give him the benefit of the doubt. We find no merit in Putz' position and affirm.

## BACKGROUND

An information filed June 12, 2000, charged Putz with first degree sexual assault, a Class II felony in violation of Neb. Rev. Stat. § 28-319(1)(c) (Reissue 1995), and with sexual assault of a child, a Class IIIA felony in violation of Neb. Rev. Stat. § 28-320.01 (Cum. Supp. 2000).

The evidence shows that the female victim, M.M., was 12 years old and that Putz was 56 years old in the summer of 1998, when the crimes took place. He ran a riding club, and she was among a group of children who regularly rode his horses. On the day of the crimes, the other children had left after a water-skiing event and M.M. was alone with Putz at his home. She was dressed in swimwear and shorts, and Putz assaulted her at that time. We relate only the details which are necessary to establish elements of the crimes charged. She testified that after he removed her swimsuit, he fondled and kissed her breast and her vagina. He also penetrated her vagina with his fingers. A knock on the door by his wife ended the assault. A short time later, he took M.M. home, and at that time, he told her to keep the event a secret. She did not disclose the event until April 27, 2000, when she told a therapist, Kimberly Plummer, about the assault.

The State's case in chief consisted of M.M.'s testimony of the background and events of the crimes, formal proof of the ages of Putz and M.M., and Plummer's opinion that the common reactions of minors who are victims of sexual assault are guilt, shame, self-blame, and embarrassment.

After the State rested, Putz moved for a dismissal of the charges, specifically of count II, on the grounds that the State had failed to prove a prima facie case and that there was not a touching and then a separate act of penetration, but, rather, one continuous act. The court denied the motion.

Putz called as witnesses several children and parents that were familiar with the operation of Putz' horse riding club and the water-skiing he had sponsored. This testimony appears to have been an indirect manner of demonstrating Putz' legitimate interest in children, his kindness to them, his routines which apparently did not present him with opportunities to be alone with the children he associated with, and their continued association with Putz after the crime occurred and even after it was

reported. There were also some minor differences between the children's memories of collateral events and M.M.'s testimony regarding those events.

Plummer, an independent therapist with a master's degree, was recalled during Putz' case in chief. She testified that she started her therapy sessions with M.M., M.M.'s mother, and M.M.'s brother in January 2000 because M.M. had problems getting along with her family. The first time that M.M. disclosed the sexual assault was to Plummer on the following April 27. At that time, Plummer asked M.M. whether Putz had molested her, because M.M. had made reference to this possibility in a previous session. M.M. then told Plummer about the assault. The events she related to Plummer were quite similar to those M.M. later testified to at trial. Following the above testimony by Plummer, Putz' counsel asked Plummer, "Isn't it true that [M.M.] told you about more than just this one incident on this particular day?" An objection based upon relevance was made, and at a sidebar, Putz' counsel stated that M.M. had told Plummer and another forensic interviewer that she was molested twice, on two separate occasions, which issue would go to M.M.'s credibility. The State argued that there were never any questions posed to M.M. regarding any statements that she may or may not have made and that the defense could not recall her just for credibility issues. The court sustained the objection.

A child interview specialist associated with a child protection center was called as an adverse witness. She had interviewed M.M. for the State, and she testified essentially that M.M. told her the same story as M.M. testified to at trial, with minor variations. We will not repeat the details.

Finally, a doctor testified that he had treated M.M. on September 13, 2000, and that according to his dictated office notes, M.M. told him that the molestation occurred 6 months prior to July 2000.

The defense renewed its motion to dismiss both counts for failure to make a prima facie case in that the State should not be allowed to obtain a conviction on both counts from the single event.

At the jury instructional conference, Putz' counsel objected to the court's proposed reasonable doubt instruction on the basis

that the term "firmly convinced" was used. The court overruled the objection, and the court's proposed instruction was given. The jury found Putz guilty of both counts, and he was sentenced as set forth above. Putz' motion for new trial, which raised substantially the same issues as he raises in this appeal, was denied.

## ASSIGNMENTS OF ERROR

Putz alleges that the district court erred in (1) convicting him for both an offense and a lesser-included offense based upon the same alleged act; (2) overruling his motion to dismiss, at the close of the State's case, as to the charge of sexual assault of a child by contact; (3) excluding testimony regarding prior statements and recantations made by M.M.; and (4) submitting, over his counsel's objection, a jury instruction which (a) lowered the State's burden of proof from proving each element beyond a reasonable doubt to allowing a conviction if the jury is " 'firmly convinced' " of the defendant's guilt and (b) shifted the burden of proof to the defendant to prove there was a " 'real possibility' " of his innocence.

## STANDARD OF REVIEW

■ Whether a crime is a lesser-included offense is determined by a statutory elements approach and is a question of law. See *State v. Williams*, 243 Neb. 959, 503 N.W.2d 561 (1993). Regarding questions of law, an appellate court is obligated to reach a conclusion independent of those determinations reached by the trial court. *State v. White*, 254 Neb. 566, 577 N.W.2d 741 (1998).

■ In proceedings where the Nebraska Evidence Rules apply, admissibility of evidence is controlled by such rules and not judicial discretion, except in those instances under the rules when judicial discretion is a factor involved in the admissibility of evidence. *State v. Kula*, 260 Neb. 183, 616 N.W.2d 313 (2000).

■ In an appeal premised upon a claim of an erroneous jury instruction, the appellant has the burden to show that the questioned instruction was prejudicial or otherwise adversely affected a substantial right of the appellant. *State v. Wright*, 261 Neb. 277, 622 N.W.2d 676 (2001). Whether a jury instruction given by a trial court is correct is a question of law. *Id.*

## ANALYSIS
*Can Defendant Be Convicted of Two Crimes on*
*Basis of One Continuous Course of Conduct?*

Putz refers to sexual assault under § 28-320.01 as a lesser-included offense of § 28-319(1)(c). This is the basic fallacy of his argument on this issue. As will be explained, established case law clearly holds that neither of these statutes is a lesser-included offense of the other.

Section 28-319(1)(c) provides that first degree sexual assault of a child is committed by "[a]ny person who subjects another person to sexual penetration . . . when the actor is nineteen years of age or older and the victim is less than sixteen years of age." Subsection (1) of § 28-320.01 provides, "A person commits sexual assault of a child if he or she subjects another person fourteen years of age or younger to sexual contact and the actor is at least nineteen years of age or older." In addition to the slight differences in age for the victims of the two crimes, sexual contact is defined in Neb. Rev. Stat. § 28-318(5) (Reissue 1995) to "include only such conduct which can be reasonably construed as being for the purpose of sexual arousal or gratification of either party." The definition for sexual penetration contained in subsection (6) of that statute has no similar intent requirement.

The Nebraska Supreme Court has held that the sexual assault of a child is not a lesser-included offense of first degree sexual assault because first degree sexual assault could be proved by showing the defendant was 19 years of age and the victim was 15 years of age, whereas sexual assault of a child could not be proved where a victim was 15 because that statute requires that the victim be 14 years of age or younger. *State v. Beermann*, 231 Neb. 380, 436 N.W.2d 499 (1989). This holding was based upon the holding in *State v. Arthaloney*, 230 Neb. 819, 433 N.W.2d 545 (1989), that a lesser-included offense is one which is necessarily established by proof of the greater offense. Under this rule, the *Beermann* court concluded that § 28-320.01 (Reissue 1985) was not a lesser-included offense of the crime specified in § 28-319(1)(c) (Reissue 1985) in spite of the fact that the defendant was 35 years old and the victim was 10.

There is another reason why § 28-320.01 (Cum. Supp. 2000) is not a lesser-included offense of the crime specified in

§ 28-319(1)(c) (Reissue 1995), and the analysis and definitions in *State v. Schmidt*, 5 Neb. App. 653, 562 N.W.2d 859 (1997), supply the precedent, although the statutes involved in *Schmidt* are different. In *Schmidt*, the defendant maintained that the court should have instructed that attempted sexual assault in both the second and third degrees under Neb. Rev. Stat. § 28-320(1) (Reissue 1989) was a lesser-included offense of attempted sexual assault in the first degree under § 28-319(1)(a) (Cum. Supp. 1994). Section 28-320(1) (Reissue 1995), the version applicable in the instant case, makes it a crime to subject another person to "sexual contact" without the victim's consent, and subsection (2) of that statute makes the crime a second degree offense if the assault causes serious bodily injury to the victim. The definition of the term "sexual contact" as used in § 28-320 and in § 28-320.01 (Cum. Supp. 2000) is given in § 28-318(5), and the part of that definition significant for the issue we are considering is that the sexual contact must be "for the purpose of sexual arousal or gratification." Section 28-318(6) defines sexual penetration, and that definition includes several types of penetration of the human body as sexual penetration, but it includes no intent element. The *Schmidt* court stated:

> In examining the elements of each crime, it is possible to have sexual penetration as defined [in § 28-318(6) (Reissue 1989)] without having sexual contact as defined [in § 28-318(5)]. Whereas the latter requires that the sexual contact be "for the purpose of sexual arousal or gratification," the former does not require the same.

5 Neb. App. at 675-76, 562 N.W.2d at 875-76. The *Schmidt* court cited *State v. Williams*, 243 Neb. 959, 503 N.W.2d 561 (1993), for the rule that "for an offense to be a lesser-included offense, it must be impossible to commit the greater offense without also committing the lesser offense." 5 Neb. App. at 675, 562 N.W.2d at 875. (This is the same definition from *State v. Arthaloney, supra,* used by the court in *State v. Beermann, supra.*) The *Schmidt* court stated that " 'there may be sexual contact without sexual penetration, but, ordinarily, sexual penetration does not exist without some form of sexual contact.' " 5 Neb. App. at 676, 562 N.W.2d at 876. It reasoned that "ordinarily" (emphasis omitted) was not the test under *Williams* and that "[w]hile our conclusion is not

consistent with the idea of sexual penetration in its customary sense, it is a result mandated by our reading of *Williams*, which we are compelled to follow." *State v. Schmidt*, 5 Neb. App. at 676, 562 N.W.2d at 876.

■ Upon the same reasoning, we conclude that the application of the definitions in § 28-318 (Reissue 1995) makes the offense specified in § 28-320.01 not a lesser-included offense of that specified in § 28-319(1)(c) (Reissue 1995). Therefore, the trial court did not err when it submitted the two separate crimes to the jury in spite of the fact that both crimes resulted from the same course of conduct. Putz argues that to convict him of two crimes as a result of one continuous course of conduct is unfair. We observe that the trial court sentenced Putz to concurrent sentences, thus considerably alleviating the effect of Putz' being convicted of two crimes.

*Did Trial Court Improperly Exclude Testimony Regarding Prior Statements and Recantations Made by Minor Victim?*

Putz alleges he was prejudiced by the trial court's exclusion of "evidence pertaining to the credibility of [M.M.'s] uncorroborated testimony." Brief for appellant at 10. This refers to a question attempted to be asked of Plummer, the therapist who counseled M.M. and the first person whom M.M. told of the sexual assault. Plummer was called as a witness by the defense. Without objection, she testified about what M.M. told her of the assault. She was asked, "Isn't it true that [M.M.] told you about more than just this one incident on this particular day?" The State objected, and in a sidebar conference, Putz' counsel stated that M.M. had separately told Plummer and another interviewer she had been molested on two separate occasions and that this evidence would go to M.M.'s credibility. In the sidebar, defense counsel stated in effect that he understood the court's ruling to be that he was to stay away from the subject. No further offer of proof was made.

■ Putz cites *U.S. v. Demarrias*, 876 F.2d 674 (8th Cir. 1989), for the proposition that testimony regarding a minor victim of sexual abuse was admissible only with regard to the victim's credibility, and *U.S. v. Waters*, 194 F.3d 926 (8th Cir. 1999), for the proposition that courts look upon recantations with suspicion.

Upon that authority, Putz' counsel argues the inconsistencies in the instant case could lead to a reasonable doubt. The State answers this argument by pointing out that the record does not show that M.M. recanted her story. At the time the question was asked of Plummer, her testimony was consistent with the testimony that M.M. had given when she testified. If Plummer testified that M.M. had told her of other assaults or had recanted something she had testified to, there would be an inconsistency which would go to M.M.'s credibility as a witness. We agree that inconsistent statements made by a victim such as M.M. are relevant and would be admissible if offered in accordance with the rules of evidence. We conclude that this alleged error cannot be considered, for two reasons. First, the record does not contain enough information for the trial court or this court to judge whether M.M. did in fact make an inconsistent statement. Second, Putz did not seek to produce the evidence in the required manner.

■ If an offer of proof had been made, we could then judge whether M.M. had made inconsistent statements or recanted her story so as to put her credibility at issue. The controlling rule on this question is Neb. Rev. Stat. § 27-103(1) (Reissue 1995), which provides:

> Error may not be predicated upon a ruling which . . . excludes evidence unless a substantial right of the party is affected, and . . . (b) In case the ruling is one excluding evidence, the substance of the evidence was made known to the judge by offer or was apparent from the context within which questions were asked.

Since this rule was not followed at least to the extent of informing this court of the evidence that would have been produced if the objection had not been sustained, we cannot consider this issue.

■ Even if we assume that Putz' counsel's statement was a satisfactory offer of proof, such inconsistent statements of a witness must be offered in the manner legal experience teaches is fair. The controlling rule is Neb. Rev. Stat. § 27-613(2) (Reissue 1995), which provides, "Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the

opposite party is afforded an opportunity to interrogate him [or her] thereon."

The subject of inconsistent statements was not touched upon in the examination of M.M., and she was therefore not given an opportunity to explain or deny any prior inconsistent statements. Consequently, any extrinsic evidence, such as Plummer's testimony, of prior inconsistent statements was not admissible. The quoted rules do not give the judge discretion in applying them, and therefore, the rules control admissibility of the evidence. See *State v. Kula*, 260 Neb. 183, 616 N.W.2d 313 (2000). This assignment of error is without merit.

### Was Trial Court's Instruction to Jury on Reasonable Doubt Erroneous?

Putz claims that jury instruction No. 6 both lowered the State's burden of proof from that of beyond a reasonable doubt, by allowing a conviction if the jury is " 'firmly convinced' " of his guilt, brief for appellant at 6, and shifted the burden to him to prove there was a " 'real possibility' " of his innocence, *id.* at 7.

In instruction No. 3, the trial court instructed the jury that the State must prove each of the material elements of the crimes beyond a reasonable doubt and then listed those elements. In instruction No. 5, it instructed the jury that the State's burden to prove the material elements beyond a reasonable doubt never shifts. The court then defined reasonable doubt in instruction No. 6, as follows:

> The State has the burden of proving the Defendant guilty beyond a reasonable doubt. In civil cases, it is only necessary to prove that a fact is more likely true than not true, but, in criminal cases, the State's proof must be more powerful than that. It must be beyond a reasonable doubt.
>
> Proof beyond a reasonable doubt is proof that leaves you *firmly convinced of the defendant's guilt.* There are very few things in this world that we know with absolute certainty, and, in criminal cases, the law does not require proof that overcomes every possible doubt. If, based on your consideration of the evidence, *you are firmly convinced that the Defendant is guilty* of the crime charged, you must find the Defendant guilty. If, on the other hand,

you think there is a *real possibility that the defendant is not guilty*, you must give the Defendant the benefit of the doubt and find the Defendant not guilty.

(Emphasis supplied.) The emphasis added is to point out the phrases Putz claims made the instruction erroneous.

During the past decade, defendants have questioned several instructions that have been previously used to define reasonable doubt. In *State v. Morley*, 239 Neb. 141, 474 N.W.2d 660 (1991), the Nebraska Supreme Court considered the jury instruction defining reasonable doubt. The instruction in *Morley* defined reasonable doubt as

"such a doubt as would cause a reasonable and prudent man, in one of the graver and more important transactions of life, to pause and hesitate before taking the represented facts as true and relying and acting thereon. It is such a doubt as will not permit you, after full, fair, and impartial consideration of all the evidence, to have an abiding conviction, to a moral certainty, of the guilt of the accused. At the same time, absolute or mathematical certainty is not required. You may be convinced of the truth of a fact beyond reasonable doubt and yet be fully aware that possibly you may be mistaken. The jury may find an accused guilty upon the strong probabilities of the case, provided such probabilities are strong enough to exclude any doubt of his guilt that is reasonable. A reasonable doubt is an actual and substantial doubt reasonably arising from the evidence, from the facts and circumstances shown by the evidence, or from the lack of evidence on the part of the State, as distinguished from a doubt arising from mere possibility, from bare imagination, or from fanciful conjecture."

239 Neb. at 154-55, 474 N.W.2d at 669-70.

That instruction was further considered by the Eighth Circuit Court of Appeals in *Morley v. Stenberg*, 25 F.3d 687 (8th Cir. 1994) (affirming instruction on basis of decision in *Victor v. Nebraska*, 511 U.S. 1, 114 S. Ct. 1239, 127 L. Ed. 2d 583 (1994), which came down during consideration of *Morley v. Stenberg* appeal).

*Victor* involved an instruction on reasonable doubt that was identical to the instruction given in *Morley v. Stenberg* except

that it substituted the word "person" for "man" at one point, "you" for "jury" at another, and "facts or circumstances" for "facts and circumstances" at a third. In *Victor*, the U.S. Supreme Court upheld the conviction, but it did state, "Though we reiterate that we do not countenance its use, the inclusion of the 'moral certainty' phrase did not render the instruction given in [the plaintiff's] case unconstitutional." 511 U.S. at 22. That opinion would convince anyone that the instruction, although approved, should be changed to pass Constitutional muster in the future. Apparently, the questioned jury instruction here was the trial judge's attempt to use a new one that would pass muster.

 The wording of the jury instructions in the *Morley* and *Victor* cases is considerably different from that in the case at hand, but these cases certainly give clear authority on the standard we should use in considering whether a given instruction purporting to define reasonable doubt meets the requirement: "The Due Process Clause requires the government to prove a criminal defendant's guilt beyond a reasonable doubt, and trial courts must avoid defining reasonable doubt so as to lead the jury to convict on a lesser showing than due process requires." *Victor v. Nebraska*, 511 U.S. at 22. In *Victor*, it was concluded that " 'taken as a whole, the instructions correctly conveyed the concept of reasonable doubt to the jury.' " *Id.* It also concluded there was no reasonable likelihood that the jurors who determined Victor's guilt applied the instruction in a way that violated the Constitution.

 Putz cites and discusses cases which hold in various ways that instructions which misdefine the State's burden of proof or the defendant's presumption of innocence are prejudicial. As the above-cited authorities hold, this is clearly correct. Putz asserts that the phrases " 'firmly convinced' " and " 'real possibility' " make the instruction at issue erroneous. Brief for appellant at 9. The above authority teaches that the correctness of this jury instruction must be judged as a whole. The full sentence in which "firmly convinced" appears is: "If, based on your consideration of the evidence, you are firmly convinced that the Defendant is guilty of the crime charged, you must find the Defendant guilty." This sentence follows and is clearly intended to be connected to the phrase "the law does not require proof

that overcomes every possible doubt." It is also limited by the sentence that follows it, which states, "If, on the other hand, you think there is a real possibility that the defendant is not guilty, you must give the Defendant the benefit of the doubt and find the Defendant not guilty." There is no reasonable possibility that the jury could interpret an instruction on the meaning of reasonable doubt to decrease the State's burden below that of proof beyond a reasonable doubt merely because the instruction would allow conviction if the jury is "firmly convinced" of the defendant's guilt when the jury is also instructed to give the defendant the "benefit of the doubt" if there is a reasonable possibility that the defendant is not guilty.

We find we are not alone in that conclusion. The instruction the trial court used is identical in substance to that which is included in instruction No. 21 of the Federal Judicial Center's pattern criminal jury instructions. In Justice Ginsburg's concurrence in *Victor v. Nebraska*, 511 U.S. 1, 27, 114 S. Ct. 1239, 127 L. Ed. 2d 583 (1994), she quotes the Federal Judicial Center's pattern instruction and subsequently states:

> This instruction plainly informs the jurors that the prosecution must prove its case by more than a mere preponderance of the evidence, yet not necessarily to an absolute certainty. The "firmly convinced" standard for conviction, repeated for emphasis, is further enhanced by the juxtaposed prescription that the jury must acquit if there is a "real possibility" that the defendant is innocent. This model instruction surpasses others I have seen in stating the reasonable doubt standard succinctly and comprehensibly.

A number of federal courts have addressed a jury instruction substantially similar to, if not the same as, that at issue in this case. In *United States v. Hunt*, 794 F.2d 1095, 1100 (5th Cir. 1986), the court found the appellant's argument that the language " 'firmly convinced of a defendant's guilt' " provided no meaningful delineation of the concept to be without merit. The court agreed with the government that " 'firmly convinced' " seemed little different from " 'a real doubt,' " which language had earlier been approved. *Id.* The appellant also alleged that the instruction's " 'real possibility that a Defendant is not guilty, you must give that Defendant the benefit of the doubt' " language shifted

the burden of proof to him. *Id.* at 1101. The court found that interpretation to be "ridiculous" because nowhere did the court impose the duty on the defendant to show his or her innocence. The instruction discussed only the consequences should that real possibility exist.

In *United States v. McBride*, 786 F.2d 45, 51-52 (2d Cir. 1986), the court suggested caution in the use of the " 'real possibility' " language because it could cause confusion and "may be misinterpreted by jurors as unwarrantedly shifting the burden of proof to the defense." That court, however, did not find the use of the " 'real possibility' " language to constitute reversible error. *Id.* at 52.

In *U.S. v. Velasquez*, 980 F.2d 1275, 1278 (9th Cir. 1992), the court noted that the phrase " 'firmly convinced' " in a reasonable doubt instruction had been held not to be plain error in *United States v. Bustillo*, 789 F.2d 1364 (9th Cir. 1986). The *Velasquez* court found no indication in other Ninth Circuit decisions that the circuit had any "qualms" about the " 'firmly convinced' " language. 980 F.2d at 1278. It further reasoned that the phrases " 'firmly convinced' " and " 'hesitate to act' " (connoting doubt sufficient to cause a person to hesitate) were essentially two ways of conveying the same definition of reasonable doubt and that in considering the instructions as a whole, the use of that language did not indicate to the jury that the prosecutor had a lesser burden. *Id.*

In *United States v. Gibson*, 726 F.2d 869, 874 (1st Cir. 1984), *cert. denied* 466 U.S. 960, 104 S. Ct. 2174, 80 L. Ed. 2d 557, the court stated that although "the sentence beginning with 'If, on the other hand' might possibly engender some confusion as to the burden of proof if it stood by itself, it is clear that when the charge is read as a whole, there was no error." The court reasoned that since the district court had also instructed the jury that the burden of proving guilt beyond a reasonable doubt was upon the government, that the burden never shifts throughout trial, and that the law does not require a defendant to prove his or her innocence, the instructions as a whole were sufficient to dispel any possible confusion arising from the reasonable doubt definition. The jury in this case was similarly instructed, and we conclude that the jury instruction on reasonable doubt was without error.

## CONCLUSION

For the reasons stated, we find no error and affirm.

AFFIRMED.