STATE OF NEBRASKA, APPELLEE, V.
VICTOR B. PUTZ, APPELLANT.
662 N.W.2d 606

Filed June 6, 2003. No. S-01-777.

James Martin Davis, of Davis & Finley Law Offices, for appellant.

Don Stenberg, Attorney General, Martin W. Swanson, and Kevin J. Slimp for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

PER CURIAM.

## I. NATURE OF CASE

Victor B. Putz was convicted in the district court for Sarpy County of one count of first degree sexual assault and one count of sexual assault of a child. Putz was sentenced to 2 to 6 years' imprisonment on the first count and 1 to 2 years' imprisonment on the second count, with the sentences to run concurrently. Both counts involved the same victim. Putz appealed his convictions to

the Nebraska Court of Appeals, and the Court of Appeals affirmed. *State v. Putz*, 11 Neb. App. 332, 650 N.W.2d 486 (2002). We granted Putz' petition for further review. We affirm.

## II. STATEMENT OF FACTS

On June 12, 2000, the State filed an information charging Putz with first degree sexual assault, a Class II felony in violation of Neb. Rev. Stat. § 28-319(1)(c) (Reissue 1995), and with sexual assault of a child, a Class IIIA felony in violation of Neb. Rev. Stat. § 28-320.01 (Cum. Supp. 2002). A jury trial on these charges was held beginning April 24, 2001.

The main witness at trial was M.M., who testified that Putz sexually assaulted her in the summer of 1998. Evidence admitted at trial shows that in the summer of 1998, M.M. was 12 years old and Putz was 56 years old. M.M. was a member of a horse riding club run by Putz. In addition to horse riding, the club would take part in other activities, including water-skiing.

M.M. testified that on the day of the incident, the club had been water-skiing. After the other children left, M.M. was alone with Putz at his home, and she was dressed in a swimsuit and shorts. M.M. testified that Putz removed her swimsuit and thereafter fondled and kissed her breast and her vagina. He also penetrated her vagina with his fingers. The incident ended when Putz' wife returned home. Putz then took M.M. home and told her to keep the incident a secret. She did not disclose the incident until April 27, 2000, when she told a therapist, Kimberly Plummer, about it. In addition to M.M.'s testimony, the State presented formal proof of the ages of Putz and M.M. and the testimony of Plummer, who testified regarding common reactions of minors who are victims of sexual assault.

After the State rested, Putz moved for a dismissal of the charges on the ground that the State had failed to prove a prima facie case. Specifically with regard to the charge of sexual assault of a child, Putz argued that there was no proof of separate acts of sexual contact and of penetration, but, rather, one continuous act. The court denied the motion.

In his defense, Putz presented the testimony of several children and parents who were familiar with the operation of Putz' riding club. The import of the testimony appeared to be that it

demonstrated Putz' legitimate interest in and kindness to children, his routines which apparently did not present him with opportunities to be alone with the children, and the children's and parents' continued association with Putz after the incident with M.M. was reported. The testimony also disclosed some minor differences between M.M.'s testimony and the recollection of the other children regarding collateral events.

Plummer was recalled during Putz' case. She testified regarding her therapy sessions with M.M. and her family and M.M.'s disclosure to Plummer on April 27, 2000, regarding the incident with Putz. During Plummer's testimony, Putz unsuccessfully attempted to enter certain other evidence which if admitted would have gone to M.M.'s credibility. Putz also called a child interview specialist associated with a child protection center as an adverse witness. She testified that she had interviewed M.M. for the State and that M.M. told her essentially the same version of events as M.M. had testified to at trial, with some variations. Finally, a doctor testified that he had treated M.M. on September 13, 2000, and that according to his dictated office notes, M.M. told him that the molestation occurred 6 months prior to July 2000.

The defense renewed its motion to dismiss both counts based on the State's purported failure to make a prima facie case and argued that the sexual assault of a child charge was a lesser-included offense of the first degree sexual assault charge. The district court overruled the motion to dismiss and concluded, based on the elements of the two offenses, that sexual assault of a child was not a lesser-included offense of first degree sexual assault.

At the jury instruction conference, Putz' counsel objected to the court's proposed instruction defining reasonable doubt. The court overruled Putz' objection and gave the following instruction:

> The State has the burden of proving the Defendant guilty beyond a reasonable doubt. In civil cases, it is only necessary to prove that a fact is more likely true than not true, but, in criminal cases, the State's proof must be more powerful than that. It must beyond a reasonable doubt.
>
> Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt. There are very few things in this world that we know with absolute certainty,

and, in criminal cases, the law does not require proof that overcomes every possible doubt. If, based on your consideration of the evidence, you are firmly convinced that the Defendant is guilty of the crime charged, you must find the Defendant guilty. If, on the other hand, you think there is a real possibility that the defendant is not guilty, you must give the Defendant the benefit of the doubt and find the Defendant not guilty.

The court also gave other instructions bearing a reasonable doubt, which we recite in the analysis section of this opinion.

On April 27, 2001, the jury returned a verdict finding Putz guilty of both counts. On July 6, the district court sentenced Putz to concurrent terms of imprisonment of 2 to 6 years for first degree sexual assault and 1 to 2 years for sexual assault of a child. Putz' motion for new trial was denied, and Putz appealed.

On appeal to the Court of Appeals, Putz asserted that the district court erred in (1) convicting him for both an offense and a lesser-included offense based upon the same alleged act; (2) overruling his motion to dismiss, at the close of the State's case, as to the charge of sexual assault of a child by contact; (3) excluding testimony regarding prior statements and recantations made by M.M.; and (4) submitting, over his counsel's objection, a jury instruction which (a) lowered the State's burden of proof from proving each element beyond a reasonable doubt to allowing a conviction if the jury is "firmly convinced" of the defendant's guilt and (b) shifted the burden of proof to the defendant to prove there was a "real possibility" of his innocence.

The Court of Appeals rejected Putz' assignments of error and affirmed the convictions. *State v. Putz*, 11 Neb. App. 332, 650 N.W.2d 486 (2002). We granted Putz' petition for further review of the decision of the Court of Appeals.

### III. ASSIGNMENTS OF ERROR

Putz asserts, restated and combined, that the Court of Appeals erred in (1) concluding that the reasonable doubt instruction given by the district court was without error and (2) affirming his convictions for both first degree sexual assault and sexual assault of a child because, on the facts alleged in this case, sexual assault of a child is a lesser-included offense of first degree sexual assault.

## IV. STANDARD OF REVIEW

 Whether jury instructions given by a trial court are correct is a question of law. *State v. Haltom*, 263 Neb. 767, 642 N.W.2d 807 (2002). When dispositive issues on appeal present questions of law, an appellate court has an obligation to reach an independent conclusion irrespective of the decision of the court below. *Id.*

 In an appeal based on a claim of an erroneous jury instruction, the appellant has the burden to show that the questioned instruction was prejudicial or otherwise adversely affected a substantial right of the appellant. *Id.*

## V. ANALYSIS

### 1. REASONABLE DOUBT INSTRUCTION

In his first assignment of error on further review, Putz asserts that the Court of Appeals erred in concluding that the reasonable doubt instruction given by the district court was without error. Putz argues that the instruction is defective in two respects: (1) the "firmly convinced" language lowers the State's burden of proof and (2) the "real possibility" language shifts the burden of proof to the defendant to prove a real possibility that the defendant is not guilty. We conclude that although criticism of the challenged instruction is valid, the instructions taken as a whole correctly state the burden of proof, and that the giving of the reasonable doubt instruction was not reversible error.

We note first that a pattern instruction on reasonable doubt, NJI2d Crim. 2.0, has been suggested for use by Nebraska courts. NJI2d Crim. 2.0 provides as follows:

> A reasonable doubt is one based upon reason and common sense after careful and impartial consideration of all the evidence. Proof beyond a reasonable doubt is proof so convincing that you would rely and act upon it without hesitation in the more serious and important transactions of life. However, proof beyond a reasonable doubt does not mean proof beyond all possible doubt.

In *State v. Garza*, 241 Neb. 934, 960, 492 N.W.2d 32, 50 (1992), this court approved an instruction substantially similar to the pattern instruction, finding that it "accurately defines the requisite standard of proof without minimizing the due process rights of"

the defendant. Instead of using the Nebraska pattern instruction, the district court in this case used the instruction quoted in the "Statement of Facts" section of this opinion. Although we conclude that the instruction given in the present case does not result in reversible error, we do find the instruction to have its faults, and we take this opportunity to note that trial courts which do not follow NJI2d Crim. 2.0 risk the possibility that the instruction will be found to be erroneous and prejudicial.

(a) Jurisprudential Support for
Instruction Given in This Case

In affirming the use of the reasonable doubt instruction given in this case, the Court of Appeals noted that instruction No. 21 from the Federal Judicial Center's pattern criminal jury instructions includes an instruction identical in substance to that given by the district court and that in a concurring opinion in *Victor v. Nebraska*, 511 U.S. 1, 114 S. Ct. 1239, 127 L. Ed. 2d 583 (1994), Justice Ginsburg endorsed the pattern instruction. See Pattern Criminal Jury Instructions: Report of the Subcommittee on Pattern Jury Instructions (Comm. on the Oper. of the Jury Sys., Jud. Conf. of the United States, Fed. Jud. Ctr. 1987). Due in large measure to the Federal Judicial Center's recommendation and Justice Ginsburg's approval of the instruction, the language at issue in this appeal has been used by trial courts in several jurisdictions, which has in turn led to challenges on appeal under the Due Process Clause.

Federal courts have consistently rejected the claim that the "real possibility" language, criticized by Putz, constitutes reversible error. See, e.g., *U.S. v. Rodriguez*, 162 F.3d 135 (1st Cir. 1998); *U.S. v. Artero*, 121 F.3d 1256 (9th Cir. 1997); *U.S. v. Conway*, 73 F.3d 975 (10th Cir. 1995); *U.S. v. Williams*, 20 F.3d 125 (5th Cir. 1994); *U.S. v. Taylor*, 997 F.2d 1551 (D.C. Cir. 1993); *U.S. v. Porter*, 821 F.2d 968 (4th Cir. 1987); *United States v. McBride*, 786 F.2d 45 (2d Cir. 1986). Various state courts have also rejected challenges to instructions with the "real possibility" language. See, *Williams v. State*, 724 N.E.2d 1093 (Ind. 2000); *Merzbacher v. State*, 346 Md. 391, 697 A.2d 432 (1997); *State v. Darby*, 324 S.C. 114, 477 S.E.2d 710 (1996); *Smith v. U.S.*, 687 A.2d 1356 (D.C. 1996), *adhered to on rehearing* 709 A.2d 78

(D.C. 1998); *Scott v. Class*, 532 N.W.2d 399 (S.D. 1995); *State v. Castle*, 86 Wash. App. 48, 935 P.2d 656 (1997).

Similarly, courts have almost unanimously rejected the claim that the "firmly convinced" language, challenged by Putz at trial and on appeal, is reversible error. See, e.g., *Harris v. Bowersox*, 184 F.3d 744 (8th Cir. 1999); *U.S. v. Brand*, 80 F.3d 560 (1st Cir. 1996); *Conway, supra*; *Williams, supra*; *Taylor, supra*; *U.S. v. Velasquez*, 980 F.2d 1275 (9th Cir. 1992); *U.S. v. Velazquez*, 847 F.2d 140 (4th Cir. 1988); *State v. Ferguson*, 260 Conn. 339, 796 A.2d 1118 (2002); *Merzbacher, supra*; *Smith, supra*; *State v. Van Gundy*, 64 Ohio St. 3d 230, 594 N.E.2d 604 (1992); *State v. Merwin*, 131 Idaho 642, 962 P.2d 1026 (1998); *State v. Antwine*, 743 S.W.2d 51 (Mo. 1987) (en banc); *Castle, supra*; *People v. Matthews*, 221 A.D.2d 802, 634 N.Y.S.2d 235 (1995).

Finally, we note that the Arizona Supreme Court has ordered that an instruction substantially similar to that given in the present case be given in all criminal cases. *State v. Portillo*, 182 Ariz. 592, 898 P.2d 970 (1995) (en banc).

### (b) Jurisprudential Criticism of Language in Reasonable Doubt Instruction

Despite the fact that courts have consistently concluded that the giving of a reasonable doubt instruction with language similar to the instruction in this case does not constitute reversible error, there has been significant criticism of both the "firmly convinced" and the "real possibility" language. Such criticism has come in cases both where courts find that the giving of the instruction is not reversible error but caution against use of the language and, in at least one case, where the court found the giving of the instruction to constitute reversible error.

With regard to the "real possibility" language, courts have cautioned that the language may be perceived as shifting the burden of proof to the defendant. The Court of Appeals for the Second Circuit did not find use of the "real possibility" language to constitute reversible error in *United States v. McBride*, 786 F.2d at 52, but the court suggested "caution in the use of such language as it may provide a basis for confusion and may be misinterpreted by jurors as unwarrantedly shifting the burden of proof to the defense." The Court of Appeals for the Second Circuit stated that

the " 'hesitate to act' " language suggested in other pattern instructions on reasonable doubt would be preferable to the "real possibility" language. *Id.* We note that the Nebraska pattern jury instruction on reasonable doubt, NJI2d Crim. 2.0, recited above, contains "hesitation" language similar to that found preferable by the Court of Appeals for the Second Circuit.

In *United States v. Porter*, 821 F.2d 968, 973 (4th Cir. 1987), the Court of Appeals for the Fourth Circuit made the following observations regarding the confusion engendered by defining reasonable doubt in terms of a "real possibility" that the accused is not guilty:

> The [trial] court did not explain the difference that it perceived between a "possibility" and a "real possibility." It failed to tell the jury that the accused did not have the burden of showing a "real possibility" of innocence. Implying the evidence must show a real possibility of innocence to justify acquittal trenches on the principle that a defendant is presumed to be innocent. If the court believed that the jury could understand its concept of a "real possibility" and allocate the burden of proof on this issue, there was no reason for it to question the jury's ability to understand the prosecution's obligation to prove the charges beyond a reasonable doubt.

Despite these concerns, the Court of Appeals for the Fourth Circuit concluded that the instructions taken as a whole properly described the prosecution's burden and that the impropriety in using the "real possibility" language as well as the "firmly convinced" language did not affect the substantial rights of the accused.

The Hawaii Court of Appeals has held that an instruction similar to the one given in this case violated the due process clause of the Hawaii Constitution. *State v. Perez*, 90 Haw. 113, 976 P.2d 427 (Haw. App. 1998) (affirmed with respect to reasonable doubt instruction, reversed in part on other grounds by 90 Haw. 65, 976 P.2d 379 (1999)). While the Hawaii court indicated that the "real possibility" and certain other language of the instruction was problematic, it determined that the "firmly convinced" language was the most compelling deficiency in the instruction. Noting that "it is possible to be firmly convinced of a fact, yet still retain

a reasonable doubt," the Hawaii court determined that use of the "firmly convinced" language reduced the reasonable doubt standard "to one akin to the standard applied where the burden of proof required is that of clear and convincing evidence." *Id.* at 128, 976 P.2d at 442. The Hawaii court noted that its pattern instruction defined "clear and convincing evidence" as evidence which " 'produces a firm belief about the truth of the allegations which the parties have presented' " and noted that clear and convincing is a lower standard of proof than proof beyond a reasonable doubt. (Emphasis omitted.) *Id.* The Hawaii court stated that the term " 'firmly convinced' " was so similar to the term " 'firm belief of conviction' " that use of the phrase "firmly convinced" lowered the standard of proof from beyond a reasonable doubt to the lesser standard of clear and convincing evidence and that therefore the language in such instruction failed to correctly convey the concept of reasonable doubt to the jury. *Id.* at 129, 976 P.2d at 443.

With reference to the Hawaii court's analysis, we note that Nebraska's civil pattern jury instruction, NJI2d Civ. 2.12B, provides, "Clear and convincing evidence means evidence that produces a firm belief or conviction about the fact to be proved." See, also, *Fales v. Norine*, 263 Neb. 932, 942, 644 N.W.2d 513, 521 (2002) ("clear and convincing evidence is that amount of evidence which produces in the trier of fact a firm belief or conviction about the existence of the fact to be proved"); *In re Estate of Mecello*, 262 Neb. 493, 633 N.W.2d 892 (2001). The Nebraska civil pattern jury instruction NJI2d Civ. 2.12B also states that clear and convincing evidence means less than proof beyond a reasonable doubt.

Finally, we note that the Court of Appeals for the Seventh Circuit warned of the dangers in attempting to define "reasonable doubt" in *United States v. Lawson*, 507 F.2d 433 (7th Cir. 1974), *cert. denied* 420 U.S. 1004, 95 S. Ct. 1446, 43 L. Ed. 2d 762 (1975), *and overruled on other grounds, United States v. Hollinger*, 553 F.2d 535 (7th Cir. 1977). The Court of Appeals for the Seventh Circuit noted that the words "reasonable doubt" were "ordinary English words of common acceptance" and stated that "[b]ecause of the very commonness of the words, the straining for making the clear more clear has the trap

of producing complexity and consequent confusion." *Lawson*, 553 F.2d at 442.

(c) Evaluation of Instructions Taken as Whole

Despite what we find to be valid criticism of the language of the reasonable doubt instruction given in this case, we conclude that Putz' rights, including his due process rights, were not violated by the giving of the instruction. The Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he or she is charged. *Cage v. Louisiana*, 498 U.S. 39, 111 S. Ct. 328, 112 L. Ed. 2d 339 (1990), *disapproved on other grounds, Estelle v. McGuire*, 502 U.S. 62, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991); *In re Winship*, 397 U.S. 358, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). However, as long as the court instructs the jury on the necessity that the defendant's guilt be proved beyond a reasonable doubt, the U.S. Constitution does not require that any particular form of words be used in advising the jury of the prosecution's burden of proof. *Victor v. Nebraska*, 511 U.S. 1, 114 S. Ct. 1239, 127 L. Ed. 2d 583 (1994). The U.S. Constitution neither prohibits trial courts from defining reasonable doubt nor requires them to do so as a matter of course. *Id.* We have held that the due process requirements of Nebraska's Constitution are similar to those of the federal Constitution. *State v. Davlin*, 263 Neb. 283, 639 N.W.2d 631 (2002).

In addition to the foregoing, we note that the U.S. Supreme Court has repeatedly emphasized that in construing an individual jury instruction, the instruction may not be judged in artificial isolation but must be viewed in the context of the overall charge to the jury considered as a whole. See, e.g., *Victor, supra*; *Cage, supra*; *Cupp v. Naughten*, 414 U.S. 141, 94 S. Ct. 396, 38 L. Ed. 2d 368 (1973). See, also, e.g., *State v. Pruett*, 263 Neb. 99, 638 N.W.2d 809 (2002) (all jury instructions must be read together, and if, taken as whole, they correctly state law, are not misleading, and adequately cover issues supported by pleadings and evidence, there is no prejudicial error necessitating reversal).

Evaluating the instructions given in this case as a whole, we note that in instruction No. 2, the jury was instructed that Putz

"is presumed to be innocent" and that "you must find him not guilty unless you decide that the state has proved him guilty beyond a reasonable doubt." Instruction No. 3, which sets forth the elements of each of the two crimes with which Putz was charged, listed, for each crime, the "material elements which the State must prove by evidence beyond a reasonable doubt." Instruction No. 3 also instructed the jury that

> [t]he State has the burden of proving beyond a reasonable doubt each and every one of the material elements of a crime charged before the Defendant may be found guilty of that crime. If you find from the evidence beyond a reasonable doubt that each of the material elements of a charge is true, it is your duty to find the Defendant guilty of that charge. On the other hand, if you find the State has failed to prove one or more of the foregoing material elements beyond a reasonable doubt, on this count, you should find the Defendant not guilty of that charge.

Instruction No. 5 further provided that "[t]he burden of proof is *always on the State* to prove beyond a reasonable doubt all of the material elements of a crime charged *and this burden never shifts*." (Emphasis supplied.) Finally, even within the instruction challenged in this appeal, the jury was reminded that "[t]he State has the burden of proving the Defendant guilty beyond a reasonable doubt."

Viewed in the context of the overall charge to the jury considered as a whole, the jury could not have interpreted the "real possibility" language as shifting the burden of proof to Putz. The jury was instructed several times that the burden of proof rested on the State, and the jury was explicitly told that this burden never shifts. The challenged instruction does not shift the burden of showing a "real possibility" of innocence; indeed, it does not allocate a burden and does nothing to contradict the other instructions and repeated emphasis that the burden of proof is on the State and never shifts. See, *U.S. v. Litchfield*, 959 F.2d 1514 (10th Cir. 1992); *U.S. v. Porter*, 821 F.2d 968 (4th Cir. 1987); *United States v. Gibson*, 726 F.2d 869 (1st Cir. 1984); *Williams v. State*, 724 N.E.2d 1093 (Ind. 2000); *Smith v. U.S.*, 687 A.2d 1356 (D.C. 1996), *adhered to on rehearing* 709 A.2d 78 (D.C. 1998); *State v. Castle*, 86 Wash. App. 48, 935 P.2d 656 (1997).

Putz argues that the phrase "firmly convinced" connotes something less than the very high level of proof required by the Constitution in criminal cases. Putz' argument asks this court to judge the instruction in isolation. However, we are required to view the instructions as a whole to determine whether they adequately convey the concept of reasonable doubt. See, e.g., *Harris v. Bowersox*, 184 F.3d 744 (8th Cir. 1999). The instructions given in this case do not rely solely on the words "firmly convinced" to convey the meaning of reasonable doubt. See *id.* Viewed in the context of the entire charge, the "firmly convinced" language does not lessen the State's burden of proof in violation of due process. The instructions as a whole repeatedly emphasized the State's heavy burden of proof and explained how the State's proof must be "more powerful" than the burden of proof in civil cases. Taken as a whole, the instructions given in this case sufficiently set forth the State's burden of proving the material elements of each offense beyond a reasonable doubt. We agree with the Court of Appeals for the First Circuit which stated:

> Whether or not the "firmly convinced" definition alone would be constitutionally sufficient to convey the meaning of proof beyond a reasonable doubt, the court's further exposition here left no doubt that the jury's duty was to convict only upon reaching consensus as to guilt beyond a reasonable doubt. Nothing further is required.

*U.S. v. Brand*, 80 F.3d 560, 566 (1st Cir. 1996). Accord, e.g., *U.S. v. Williams*, 20 F.3d 125 (5th Cir. 1994); *State v. Ferguson*, 260 Conn. 339, 796 A.2d 1118 (2002); *State v. Antwine*, 743 S.W.2d 51 (Mo. 1987) (en banc).

In analyzing Putz' argument, "the proper inquiry is not whether the instruction 'could have' been applied in an unconstitutional manner, but whether there is a reasonable likelihood that the jury *did* so apply it." (Emphasis in original.) *Victor v. Nebraska*, 511 U.S. 1, 6, 114 S. Ct. 1239, 127 L. Ed. 2d 583 (1994). The constitutional question, therefore, is whether there is a reasonable likelihood that the jury understood the instructions to allow conviction based on proof insufficient to meet the standard of *In re Winship*, 397 U.S. 358, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970) (holding, inter alia, that due process requires proof beyond reasonable doubt of each fact necessary to constitute crime). See

*Victor, supra.* Considering the instructions as a whole, there is not a reasonable likelihood that the jury understood the instructions to permit conviction of Putz based on proof insufficient to satisfy *In re Winship, supra.*

■ As we noted earlier, it would have been better had the trial court in this case given the reasonable doubt instruction set forth in the Nebraska Jury Instructions and previously approved by this court. See, NJI2d Crim. 2.0; *State v. Garza*, 241 Neb. 934, 492 N.W.2d 32 (1992). Adherence to a standard reasonable doubt instruction promotes uniformity and avoids the pitfalls of ad hoc interpretations and repetitive constitutional challenges. See *Smith v. U.S.*, 709 A.2d 78 (D.C. 1998). See, generally, Robert G. Nieland, Pattern Jury Instructions: A Critical Look at a Modern Movement to Improve the Jury System (1979). Furthermore, varying definitions " '[detract] from the goal of a uniform and equal system of justice.' " See *Smith*, 709 A.2d at 81, quoting *State v. Portillo*, 182 Ariz. 592, 898 P.2d 970 (1995) (en banc). "In a matter central to the determination of guilt or innocence, as this is, the appearance of evenhandedness, like the actuality, is important. 'Use of a standard definition thus will eliminate confusion and foster fairness for defendants, the [government], and jurors alike.' " *Id.* For these reasons, we have indicated that whenever an applicable instruction may be taken from the Nebraska Jury Instructions, that instruction is the one which should usually be given to the jury in a criminal case. See *State v. Dush*, 214 Neb. 51, 332 N.W.2d 679 (1983).

Notwithstanding the district court's deviation from the Nebraska Jury Instructions in this case, such deviation did not result in a constitutionally deficient instruction. The instructions given in this case, when considered as a whole, do not present a reasonable likelihood that the jury understood the instructions to allow conviction based on proof less than proof beyond a reasonable doubt. We therefore conclude that the Court of Appeals did not err in concluding that the reasonable doubt instruction given in this case did not give rise to reversible error.

### 2. Lesser-Included Offense

In his second assignment of error on further review, Putz asserts that the Court of Appeals erred in concluding that sexual

assault of a child was not a lesser-included offense of first degree sexual assault under the particular facts of this case. We note that Putz and the Court of Appeals have treated this issue as a lesser-included offense issue rather than a double jeopardy issue. We will therefore analyze this issue as it has been presented.

The Court of Appeals concluded that under Nebraska statutes, sexual assault of a child is not a lesser-included offense of first degree sexual assault. The Court of Appeals was correct. First degree sexual assault under § 28-319(1) is described as "subject[ing] another person to sexual penetration . . . (c) when the actor is nineteen years of age or older and the victim is less than sixteen years of age." Sexual assault of a child under § 28-320.01(1) is described as "subject[ing] another person fourteen years of age or younger to sexual contact and the actor is at least nineteen years of age or older." The Court of Appeals noted that first degree sexual assault under § 28-319(1)(c) could be proved by showing the defendant was 19 years of age and the victim was 15 years of age, whereas sexual assault of a child under § 28-320.01 could not be proved unless the victim was 14 years of age or younger. The Court of Appeals also noted that § 28-319(1)(c) required proof of "sexual penetration" whereas § 28-320.01 required proof of "sexual contact" and that the definition of "sexual contact" in Neb. Rev. Stat. § 28-318(5) (Reissue 1995) requires that contact be "for the purpose of sexual arousal or gratification." We further note that the definition of "sexual penetration" in § 28-318(6) includes no intent element.

In petitioning for further review, Putz argues that because of the facts of the present case, sexual assault of a child was a lesser-included offense of first degree sexual assault because each charge was supported by the same set of facts and Putz was charged with two crimes based on the same actions. Putz' argument would require a court to look to the specific facts of his particular case in order to determine whether one crime is a lesser-included offense of the other. However, the test adopted by this court to determine whether one crime is a lesser-included offense of another is a statutory elements test in which a court looks to the statutory elements of each crime rather than the particular facts of a specific case.

In *State v. Williams*, 243 Neb. 959, 965, 503 N.W.2d 561, 565 (1993), we adopted a statutory elements test to determine whether an offense is a lesser-included offense of another and held that in order " ' "[t]o be a lesser included offense, the elements of the lesser offense must be such that it is impossible to commit the greater without at the same time having committed the lesser. . . ." ' " We further stated that "in determining whether an offense is indeed a lesser-included one, a court initially does not look to the evidence in the particular case, but, rather, as the name of the statutory elements rule implies, looks only to the elements of the criminal offense." *Id.* " 'To determine whether one statutory offense is a lesser-included offense of the greater, we look to the elements of the crime and not to the facts of the case.' " *State v. Smith*, 3 Neb. App. 564, 570, 529 N.W.2d 116, 121 (1995).

We find no error in the manner in which the Court of Appeals has applied the statutory elements test to the analysis of the statutes at issue in this case. Comparing the greater offense of first degree sexual assault, § 28-319(1)(c), to the lesser offense of sexual assault of a child, § 28-320.01, it is possible to commit the greater offense without at the same time having committed the lesser. Because the statutory elements test requires a court to look to the elements of the crimes and not to the facts of the case, we reject Putz' argument that we should initially examine the issue under the particular facts of this case. Putz argues that in so doing, we would be forced to conclude that sexual assault of a child is a lesser-included offense of first degree sexual assault under the facts of this case. Contrary to Putz' argument, we conclude that the Court of Appeals correctly applied the *Williams* statutory elements test when it looked to the elements of the two offenses rather than the particular facts of this case and concluded that sexual assault of a child is not a lesser-included offense of first degree sexual assault. We therefore find no merit in Putz' second assignment of error on further review.

## VI. CONCLUSION

We conclude that the reasonable doubt instruction given by the district court in this case, while subject to valid criticism, did not give rise to reversible error because the instructions taken as a

whole adequately described the standard of proof beyond a reasonable doubt. However, we take this occasion to urge that trial courts use the Nebraska pattern instruction on reasonable doubt. We further conclude that the Court of Appeals did not err in its holding that sexual assault of a child is not a lesser-included offense of first degree sexual assault. We therefore affirm the decision of the Court of Appeals which in turn affirmed Putz' convictions and sentences.

AFFIRMED.