The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader.  The summaries may not be cited or relied upon as they are not the official language of the division.  Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
December 11, 2025

**2025COA93**

**No. 23CA1435, *People v. Berumen* — Criminal Law — Model Jury Instructions — Presumption of Innocence, Burden of Proof, and Reasonable Doubt**

In this criminal appeal, the defendant appeals his conviction for three counts of sexual exploitation of a child and one count of invasion of privacy.  The defendant contends that the trial court committed structural error when it refused his request to give the jury the well-worn and long-used reasonable doubt instruction, *see* COLJI-Crim. E:03 (2021), instead giving the 2022 Colorado model criminal jury instruction on reasonable doubt, *see* COLJI-Crim. E:03 (2022).  He contends that the language in the 2022 reasonable doubt instruction lowered the prosecution's burden of proof.

In a divided opinion, the majority of a division of the court of appeals rejects the defendant's jury instruction challenge, concluding that the 2022 version of the model criminal jury

instruction on reasonable doubt was an accurate statement of the law and didn't lower the prosecution's burden of proof. The partial dissent, however, would reach a contrary conclusion, particularly with respect to the inclusion of the phrase "real possibility" in the 2022 reasonable doubt instruction, and would hold that the inclusion of this language in the newer instruction lowers the prosecution's burden of proof, necessitating reversal.

Because the division also unanimously rejects the defendant's contention that the trial court's refusal to give the jury a choice of evils instruction necessitates reversal, the division affirms.

Court of Appeals No. 23CA1435
City and County of Broomfield District Court No. 21CR67
Honorable Sean Finn, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Ever Ulises Berumen,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division VI
Opinion by JUDGE WELLING
Sullivan, J., concurs
Berger*, J., concurs in part and dissents in part

Announced December 11, 2025

Philip J. Weiser, Attorney General, Jaycey DeHoyos, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Robert P. Borquez, Alternate Defense Counsel, Denver, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1     Defendant, Ever Ulises Berumen, appeals his conviction for three counts of sexual exploitation of a child and one count of invasion of privacy.  He contends that the trial court committed structural error by refusing his counsel's request to give the jury the well-worn and long-used reasonable doubt instruction, *see* COLJI-Crim. E:03 (2021), and instead giving the 2022 Colorado model criminal jury instruction on reasonable doubt, *see* COLJI-Crim. E:03 (2022).  He contends that the language in the 2022 reasonable doubt instruction lowered the prosecution's burden of proof.  Berumen also contends that the trial court's refusal to give the jury a choice of evils instruction necessitates reversal.  Because we aren't persuaded by either contention, we affirm.

## I.     Background

¶ 2     In February 2021, Berumen, then twenty-two years old, met K.D., then seventeen years old, through Snapchat.  After chatting on the app for a few days, the two met in person on February 22, 2021.  Berumen, K.D., and one of Berumen's friends drank together at Berumen's apartment.  K.D. estimates that she drank at least ten shots over a couple of hours.

¶ 3     The three watched YouTube videos in the living room and then in the bedroom.  Eventually, Berumen gave K.D. clothes to sleep in and the friend went back into the living room.  Berumen and K.D. lay in bed for a while, then the two started kissing and having sex.

¶ 4     K.D. blacked out while they were having sex.  While K.D. drifted in and out of consciousness, Berumen invited his friend into the bedroom to have sex with K.D.  Using his phone, Berumen video recorded both him and his friend having sex with K.D.

¶ 5     The conduct continued until two or three in the morning on February 23, 2021, and Berumen summoned a ride home for K.D. After K.D. left his home, Berumen downloaded the video of K.D. and his friend having sex from Snapchat to his phone's camera roll and texted it to a group chat.  Berumen then deleted the video from his phone.

¶ 6     Once K.D. arrived home, she was so intoxicated that she couldn't walk, so her mother contacted the police.  During her police interview with Detective David Hiatt and Detective Aaron Coleman, K.D. reported that she had been sexually assaulted and that Berumen had recorded the incident on his phone.

¶ 7    Starting shortly before midnight on February 23, Detective Hiatt interviewed Berumen about the allegations.  During the interview, Detective Hiatt said that K.D. was seventeen and told Berumen that she had accused him of sexual assault.  Berumen denied knowing K.D.'s age and having had sex with her.  Berumen turned over his phone to police near the end of the interview, and he was released in the early hours of February 24.

¶ 8    Later on February 24, Berumen purchased a new Android phone and downloaded Snapchat onto it.  Two days later, on February 26, 2021, he redownloaded the videos of him and his friend having sex with K.D. from Snapchat to his Android.  Berumen stored the Android in his car's glove compartment and didn't use it thereafter, instead purchasing and using a new iPhone.

¶ 9    In March 2021, Berumen was arrested on two charges of sexual assault and two charges of sexual exploitation of a child.  While in jail, Berumen had his parents retrieve from his car the Android with the videos of him and his friend having sex with K.D.  In April 2021, Berumen's parents turned over the Android to his attorney.  About six months after that — in or around October 2021 — Berumen's attorney turned the Android over to the police,

and Berumen gave the police consent to search it. During the search of the Android, police found two videos of K.D. — one of her having sex with Berumen and another of her having sex with Berumen's friend.

¶ 10    In March 2023, the prosecution moved to dismiss the sexual assault charges and add one additional charge of sexual exploitation of a child. Thus, entering trial, Berumen was charged with three counts of felony sexual exploitation of a child. The charges broke down as follows:

1. sexual exploitation of a child (causing sexual conduct for a performance of a child) in violation of section 18-6-403(3)(d), (5)(a), C.R.S. 2025, a class 3 felony, for conduct on or about February 23, 2021 (performance charge);

2. sexual exploitation of a child (possession with intent to distribute) in violation of section 18-6-403(3)(c), (5)(a), a class 3 felony, for conduct on or about February 23, 2021 (intent to distribute charge); and

3. sexual exploitation of a child (possession or control of a video for any purpose) in violation of section 18-6-

403(3)(b.5), (5)(b)(II), a class 4 felony,[1] for conduct on days between and including February 23, 2021, and March 7, 2021 (possession of a video charge).

¶ 11 Knowledge that K.D. was under eighteen years old was an element of all three sexual exploitation of a child charges. At trial, Berumen pursued a mistake of age defense, arguing that he didn't know K.D. was only seventeen years old. Berumen's counsel also requested an instruction on a choice of evils defense with respect to the possession of a video charge, arguing that Berumen redownloaded and retained possession of the video only to avoid the greater harm of being falsely accused of and charged with sexual assault. The court refused to give the jury such an instruction.

¶ 12 Following trial, the jury found Berumen guilty on all three sexual exploitation of a child charges, plus a lesser nonincluded offense of misdemeanor invasion of privacy. The trial court sentenced Berumen to five years of probation with additional conditions of supervision for adult sex offenders.

---

[1] The possession or control charge under section 18-6-403(3)(b.5), C.R.S. 2025, was enhanced from a class 5 felony to a class 4 felony because the sexually exploitative material was a video. *See* § 18-6-403(5)(b)(II).

## II. Analysis

¶ 13    Berumen raises two issues on appeal.  First, he contends that the trial court erred by using the 2022 model reasonable doubt jury instruction from the Colorado Supreme Court Model Criminal Jury Instructions Committee (instructions committee).  Second, he contends that the trial court erred by refusing to give the jury a choice of evils instruction.  We address and reject both contentions in turn.

### A.    Beyond a Reasonable Doubt Standard

¶ 14    Berumen contends that the trial court improperly instructed the jury on the definition of "reasonable doubt."  Specifically, Berumen argues that the court's use of the 2022 model jury instruction for the presumption of innocence, burden of proof, and definition of reasonable doubt was improper because the language in the instruction has been rejected by other jurisdictions, the 2021 model instruction had a long history of acceptance, and the

committee decision to change the instruction was controversial. We disagree that the trial court reversibly erred.[2]

### 1. Additional Facts

¶ 15     Trial in this case took place in April 2023. A few months prior, on December 9, 2022, the instructions committee promulgated a new 2022 model instruction defining reasonable doubt. *See* COLJI-Crim. E:03 (2022); Colo. Jud. Branch, Model Crim. Jury Instructions Comm., *Meeting Minutes of: Friday, December 9, 2022*, https://perma.cc/6WXQ-29Y8.

¶ 16     Notwithstanding the newly promulgated 2022 model instruction, Berumen asked the trial court to give the COLJI-Crim. E:03 (2021) instruction on reasonable doubt, which defines reasonable doubt as follows:

> Reasonable doubt means a doubt based upon reason and common sense which arises from a

---

[2] The Colorado Supreme Court has granted certiorari in *Teran-Sanchez v. People*, (Colo. No. 25SC148, Sept. 2, 2025) (unpublished order), to address whether the definition of reasonable doubt in the 2023 model instruction violates a defendant's rights to due process and a fair trial. We recognize that an opinion in *Teran-Sanchez* is likely to resolve most, if not all, of the challenges to the reasonable doubt instruction advanced by Berumen. But because *Teran-Sanchez* has yet to be fully briefed, much less announced, we are issuing our opinion without the Colorado Supreme Court's guidance.

fair and rational consideration of all of the evidence, or the lack of evidence, in the case. It is a doubt which is not a vague, speculative or imaginary doubt, but such a doubt as would cause reasonable people to hesitate to act in matters of importance to themselves.

¶ 17    The court denied Berumen's request and gave the then newly-promulgated 2022 model instruction to the jury, which reads, in pertinent part, as follows:

> The burden of proof in this case is upon the prosecution. The prosecution must prove to the satisfaction of the jury beyond a reasonable doubt the existence of each and every element necessary to constitute the crime charged. This burden requires more than proof that something is highly probable, but it does not require proof with absolute certainty.
>
> Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt. If you are firmly convinced of the defendant's guilt, then the prosecution has proven the crime charged beyond a reasonable doubt. But if you think there is a real possibility that the defendant is not guilty, then the prosecution has failed to prove the crime charged beyond a reasonable doubt.
>
> After considering all the evidence, if you decide the prosecution has proven each of the elements of a crime charged beyond a reasonable doubt, you should find the defendant guilty of that crime.

8

> After considering all the evidence, if you decide the prosecution has failed to prove any one or more of the elements of a crime charged beyond a reasonable doubt, you should find the defendant not guilty of that crime.

COLJI-Crim. E:03 (2022).[3]

### 2. Standard of Review and Applicable Law

¶ 18    "An appellate court will review jury instructions de novo to determine whether the instructions accurately informed the jury of the governing law." *Riley v. People*, 266 P.3d 1089, 1092 (Colo. 2011).  We review a trial court's decision to give, or not give, a particular jury instruction for an abuse of discretion. *People v. Melara*, 2025 COA 48, ¶ 16.  "A trial court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair, or when it misconstrues or misapplies the law." *People v. Vigil*, 2024 COA 72, ¶ 19.

---

[3] After the trial in this case, the instructions committee again updated the reasonable doubt instruction, this time reinserting the reference to the "lack of evidence" by adding a new sentence that reads, "A reasonable doubt can be based on the evidence presented or the lack of evidence presented."  COLJI-Crim. E:03 (2023); *see also People v. Schlehuber*, 2025 COA 50, ¶ 18 & n.2 (explaining that this change was made "without explanation"); *People v. Melara,* 2025 COA 48, ¶ 15 (noting that "[t]he committee provided no rationale for the additional sentence").

¶ 19    "Due process guarantees to the criminal defendant that the prosecution must prove every factual element necessary to constitute the crime charged beyond a reasonable doubt before the defendant may be convicted and subjected to punishment." *Vega v. People*, 893 P.2d 107, 111 (Colo. 1995); *see also* U.S. Const. amend. XIV, § 1; Colo. Const. art. 2, § 25.  While trial courts are required to properly instruct the jury on the reasonable doubt standard, they have flexibility in defining it.  *Johnson v. People*, 2019 CO 17, ¶ 10.  But "[i]nstructions that lower the prosecution's burden of proof below the reasonable doubt standard constitute structural error and require automatic reversal." *Tibbels v. People*, 2022 CO 1, ¶ 22.  To determine if a trial court's instruction lowered the reasonable doubt burden, we look at the record as a whole and "ask whether there is a reasonable likelihood the jury applied the instructions in an unconstitutional manner." *People v. Garcia*, 2021 COA 80, ¶ 26, *aff'd*, 2023 CO 30.

¶ 20    Model jury instructions are intended to be guidelines for trial courts to consider.  *People v. Morales*, 2014 COA 129, ¶ 42.  They are not, however, considered binding law, *People v. Randolph*, 2023 COA 7M, ¶ 22, *aff'd*, 2025 CO 44, nor are they "a safe harbor that

10

insulates instructional error from reversal," *Garcia v. People*, 2019 CO 64, ¶ 22.  We must review the use of a model jury instruction just as we would any other jury instruction.  *See id.* at ¶ 23.

### 3.    Application

¶ 21    Berumen argues that the trial court erred by instructing the jury using the 2022 model instruction.  He takes specific issue with the "firmly convinced" and "real possibility" language, as well as the omission of an instruction for the jury to consider the lack of evidence.  We conclude that the trial court's use of the 2022 model instruction isn't grounds for reversal.

### a.    Accurate Statement of Law

¶ 22    As an initial matter, we conclude that the 2022 model instruction is an accurate statement of the law.  While some of the language included in the 2022 model instruction has faced criticism in some jurisdictions, it has been accepted by divisions of this court, with support from federal courts.  *See, e.g., People v. Schlehuber*, 2025 COA 50, ¶ 30 (collecting federal cases); *Melara,* ¶¶ 30-32.  The division in *Schlehuber* explained,

> The phrase "firmly convinced" correctly connotes a standard of "near certitude," *Jackson v. Virginia*, 443 U.S. 307, 315

(1979) — one that is higher than "highly probable" but stops short of absolute certainty. *See People v. Camarigg*, 2017 COA 115M, ¶ 49 (noting distinction between "proof beyond a reasonable doubt and proof beyond all doubt"). And the phrase "real possibility" correctly directs the jury not to acquit the defendant simply because it can conceive of *some* fanciful possibility that the defendant is not guilty. [*United States v.*] *Williams*, 20 F.3d [125,] 131 [(5th Cir. 1994)]; *see also Victor* [*v. Nebraska*], 511 U.S. [1,] 17 [(1994)] (approving of instruction that a reasonable doubt is "not a mere possible doubt" because everything "is open to some possible or imaginary doubt").

*Schlehuber*, ¶ 31. We agree with this reasoning. Accordingly, we conclude that the 2022 model instruction is an accurate statement of the law.

¶ 23    We aren't persuaded otherwise by Berumen's argument that the inclusion of the phrases "firmly convinced" and "real possibility" warrants reversal because courts in other jurisdictions have criticized or rejected similar language. Berumen points to decisions from the Hawaii Court of Appeals — *State v. Perez*, 976 P.2d 427 (Haw. Ct. App. 1998), *aff'd in part and rev'd in part on other grounds*, 976 P.2d 379 (Haw. 1999) — and the Supreme Court of Nebraska — *State v. Putz*, 662 N.W.2d 606 (Neb. 2003) — for the proposition that the terms "firmly convinced" and "real possibility"

12

are problematic when used to define proof beyond a reasonable doubt. We disagree.

¶ 24 We begin our consideration of this argument by looking to the jurisdictions where the language has been criticized. The courts in *Perez* and *Putz* both took issue with the "firmly convinced" language because that language is strikingly similar to the definition of the lower "clear and convincing" standard in their respective jurisdictions, as both jurisdictions' definitions for "clear and convincing" include the phrase "produces a firm belief." *Perez*, 976 P.2d at 442-43; *Putz*, 662 N.W.2d at 613. Because the "clear and convincing" standard is lower than the "beyond a reasonable doubt" standard, the court in *Perez* reasoned, the use of that phrase in defining reasonable doubt lowered the prosecution's burden of proof. *Perez*, 976 P.2d at 443.

¶ 25 In Colorado, however, clear and convincing evidence is defined as "evidence that is highly probable and free from serious or substantial doubt." *Destination Maternity v. Burren*, 2020 CO 41, ¶ 10 (citation omitted). Not only is the definition free of any language similar to "firmly convinced," but the 2022 model instruction makes the distinction between the two standards clear.

The 2022 model instruction explicitly states that proof beyond a reasonable doubt "requires *more* than proof that something is highly probable." COLJI-Crim. E:03 (2022) (emphasis added). "And it requires the prosecution to dispel any 'real possibility' the defendant is not guilty, not just a serious or substantial one." *Schlehuber*, ¶ 32 (citing COLJI-Crim. E:03 (2022)). Thus, even assuming that a jury in a criminal case somehow becomes aware of how this civil standard of proof is defined under Colorado law, the "firmly convinced" language can't be confused with the lower clear and convincing evidence standard.

¶ 26 In raising concern about the "real possibility" language shifting the burden of proof, the *Perez* and *Putz* courts relied on the following quote from *United States v. Porter*, 821 F.2d 968, 973 (4th Cir. 1987):

> The district court did not explain the difference that it perceived between a "possibility" and a "real possibility." It failed to tell the jury that the accused did not have the burden of showing a "real possibility" of innocence. Implying the evidence must show a real possibility of innocence to justify acquittal trenches on the principle that a defendant is presumed to be innocent. If the court believed that the jury could understand its concept of a "real possibility" and allocate the burden of

14

> proof on this issue, there was no reason for it to question the jury's ability to understand the prosecution's obligation to prove the charges beyond a reasonable doubt.

¶ 27    Despite this concern, the *Putz* court concluded that the subject jury instructions, read as a whole, didn't shift the burden to the defendant. *Putz*, 662 N.W.2d at 615. The *Putz* court pointed out that the jury was instructed several times that the burden rests with the prosecution and was told that this burden never shifts. *Id.*

¶ 28    Similarly, the jury instructions in Berumen's trial repeatedly instructed the jury that the prosecution has the burden of proof. Instruction No. 4 said, "The burden of proof in this case is upon the prosecution." Instruction No. 15 made five references to the prosecution bearing the burden of proof. Instruction No. 17 similarly made three references to the burden of proof being on the prosecution. During voir dire, the trial court told the jury venire that the burden belonged to the prosecution several times.

¶ 29    Although the trial court didn't specifically tell the jurors that the burden never shifts, it did tell them during voir dire that the defendant doesn't have the burden. Regardless, the "real

possibility" language doesn't suggest any burden shifting, as explained by the division in *Schlehuber*:

> Nothing in that phrase suggests that the defendant must be "the source of the 'real possibility.'" To the contrary, the district court repeatedly instructed the jury that the prosecution bears the burden of proving each element of the crime beyond a reasonable doubt. The "real possibility" language simply explained the threshold the prosecution must overcome to do so.

*Schlehuber*, ¶ 34 (citation omitted). Accordingly, we conclude that the "real possibility" language doesn't shift the burden of proof.

¶ 30    In summary, the reasons other jurisdictions reject the "firmly convinced" and "real possibility" language aren't present in Colorado. Additionally, Colorado courts have found this language to be a correct statement of the law that doesn't shift the burden of proof. With that, we conclude that the "firmly convinced" and "real possibility" language doesn't lower the prosecution's burden of proof.

### b.    Lack of Evidence

¶ 31    Berumen takes issue with the 2022 model instruction's omission of language directing the jury to consider the lack of evidence, arguing that it should have been included in the

reasonable doubt instruction. To support his argument, Berumen highlights that this court, like the United States Supreme Court, has a long history of using model jury instructions that incorporate the "lack of evidence" language. While this may be true, we aren't persuaded that the omission of this language requires reversal.

¶ 32 The *Melara* and *Schlehuber* divisions of this court addressed the omission of "lack of evidence" language from the 2022 model instruction. In both cases, the divisions considered whether the omission in the 2022 model instruction required reversal. We agree with both divisions that when instructing a jury on the beyond a reasonable doubt standard, it's best practice to instruct the jury to consider the lack of evidence in the case. *Melara,* ¶ 24; *Schlehuber,* ¶ 20. Best practices aside, we also agree with both divisions that the omission of the "lack of evidence" language doesn't lower the prosecution's burden of proof. *Schlehuber,* ¶ 25; *Melara,* ¶ 32; *see Melara,* ¶ 125 (Welling, J., specially concurring).

¶ 33 In reaching its conclusion, the *Schlehuber* division reasoned that "the concept of reasonable doubt inherently invites jurors to consider what evidence is missing." *Schlehuber,* ¶ 21. Both divisions noted that the omission of the "lack of evidence" language

"is not tantamount to a prohibition on doing so." *Melara*, ¶ 32; *see Schlehuber*, ¶ 21 (citing *Melara*, ¶ 32). The *Schlehuber* division observed that the 2022 model instruction, read as a whole, bolsters that conclusion by informing the jury that (1) the prosecution bears the burden of proof; (2) the defendant is presumed innocent unless the prosecution has met its burden; and (3) the jury must consider "all the evidence" in making its final determination. *Schlehuber*, ¶ 22. We agree with the division in *Schlehuber* and, therefore, conclude that the omission of the "lack of evidence" language doesn't lower the prosecution's burden of proof. Accordingly, reversal isn't warranted.

## B.     Choice of Evils Defense

¶ 34     Berumen contends that the trial court improperly refused his counsel's request to instruct the jury on a choice of evils affirmative defense. Specifically, he argues that he was entitled to assert the affirmative defense for the possession of a video charge. We conclude that (1) the trial court properly determined that Berumen was foreclosed from asserting the choice of evils defense; and (2) even if we were to assume the trial court erred, based on the entirety of the jury's verdict, the court's refusal to give a choice of

18

evils jury instruction couldn't have contributed to Berumen's conviction for any of the offenses. So, regardless of whether it was error, it was harmless beyond a reasonable doubt.

### 1. Additional Facts

¶ 35 As we have previously discussed, Berumen's defense against all three felony sexual exploitation of a child charges was a mistake of age affirmative defense. But because that defense only applied to his conduct before he was told K.D.'s age by Detective Hiatt during the interview that began shortly before midnight on February 23, 2021, it was only a complete defense to the performance charge and the intent to distribute charge. This is so because, according to the charging documents and the evidence presented at trial, both of those offenses, if committed, were completed before Berumen was told by Detective Hiatt that K.D. was only seventeen.

¶ 36 The possession of a video charge is different. Some of the conduct occurred before Berumen was told K.D.'s age — from the filming to the deletion of the videos on February 23, 2021. But some of the conduct related to that charge occurred after his interview with Detective Hiatt — from the act of redownloading the videos on the Android on February 26, 2021, until he was arrested

in March 2021. Thus, to be acquitted of that charge, the jury would have to accept his mistake of age defense for the conduct on and before February 23, 2021, and a different defense regarding his conduct after that date. That's where the choice of evils defense comes in.

¶ 37    Section 18-1-702(1), C.R.S. 2025, defines when the affirmative defense of choice of evils is available to a defendant:

> [C]onduct which would otherwise constitute an offense is justifiable and not criminal when it is necessary as an emergency measure to avoid an imminent public or private injury which is about to occur by reason of a situation occasioned or developed through no conduct of the actor, and which is of sufficient gravity that, according to ordinary standards of intelligence and morality, the desirability and urgency of avoiding the injury clearly outweigh the desirability of avoiding the injury sought to be prevented by the statute defining the offense in issue.

¶ 38    In his motion for a choice of evils instruction, Berumen argued that after his interview with Detective Hiatt, he believed that the private injury of being charged with and arrested for sexual assault was imminent. He further argued that he redownloaded the videos, despite knowing K.D. was seventeen, as evidence that the sex was

consensual and to avoid being falsely arrested for and charged with sexual assault.

¶ 39 At a pretrial hearing, the trial court deferred deciding on the instruction until after all evidence had been presented at trial. The trial court limited the potential availability of the affirmative defense instruction to Berumen's conduct *after* his interview with Detective Hiatt, as that's when any fear of being arrested and charged with sexual assault first arose.

¶ 40 Berumen chose to testify. During his testimony, he admitted to filming the videos but said he had deleted them after texting them to friends, and before learning that K.D. was only seventeen years old. He further testified that he redownloaded the videos to the Android two days after his interview with Detective Hiatt and that he did so to protect himself from false sexual assault charges.

¶ 41 After hearing all the evidence, the trial court refused to give the jury a choice of evils instruction. The trial court explained that the evidence didn't show a sudden and unforeseen emergence of a situation requiring Berumen to possess the videos to prevent an imminently impending injury. The trial court found that Berumen's

two-day delay in redownloading the videos didn't support the argument that he feared an *imminent* arrest.

### 2. Standard of Review

¶ 42 A defendant is entitled to an affirmative defense instruction if they offer "some credible evidence" to support the claimed defense. § 18-1-407(1), C.R.S. 2025; *Pearson v. People*, 2022 CO 4, ¶ 16. If a defendant meets the evidentiary threshold for being entitled to an affirmative defense instruction, but the court refuses to give the instruction, "then the prosecution's burden of proof has been impermissibly lowered, implicating a defendant's constitutional rights." *People v. Gallegos*, 2023 COA 47, ¶ 17 (quoting *Pearson*, ¶ 16), *aff'd*, 2025 CO 41M. "Such an error, if preserved, is subject to constitutional harmless error review." *Pearson*, ¶ 16. We decline to reverse upon a finding of constitutional error only if we are convinced that the error was harmless beyond a reasonable doubt, such that there is no reasonable possibility that the error might have contributed to the conviction. *Hagos v. People*, 2012 CO 63, ¶ 11.

### 3.    Applicable Law

¶ 43    Before a defendant may present a choice of evils defense to the jury, the trial court must determine, as a matter of law, "whether the claimed facts and circumstances would, if established, constitute a justification."  § 18-1-702(2).

¶ 44    To establish that the prohibited conduct was necessary to prevent an imminent injury, a defendant must make an offer of proof establishing that

> (1) all other potentially viable and reasonable alternative actions were pursued, or shown to be futile, (2) the action taken had a direct causal connection with the harm sought to be prevented, and . . . the action taken would bring about the abatement of the harm, and, (3) the action taken was an emergency measure pursued to avoid a specific, definite, and imminent injury about to occur.

*Andrews v. People*, 800 P.2d 607, 610 (Colo. 1990) (footnotes omitted).

¶ 45    "[I]f a reasonable legal alternative was available to defendants as a means to avoid the threatened injury, they properly may be foreclosed from asserting a choice of evils defense." *People v. Brandyberry*, 812 P.2d 674, 679 (Colo. App. 1990).

23

## 4. Application

¶ 46 For the reasons discussed below, we conclude that the trial court properly determined that Berumen was foreclosed from asserting the choice of evils defense; but even if the trial court erred by refusing to give the choice of evils jury instruction, any error was harmless beyond a reasonable doubt.

### a. Viable Alternative

¶ 47 There are multiple problems with Berumen's attempt to invoke a choice of evils defense under the facts of this case, including the reasons the trial court gave for its refusal to give the instruction. The most glaring is that neither Berumen's offer of proof nor his trial testimony, if taken as true, established that "all other potentially viable and reasonable alternative[s]" to criminally redownloading the videos to a personal device, as he was charged with doing, "were pursued, or shown to be futile." *See Andrews*, 800 P.2d at 610. This is so because, as discussed below, he could have given law enforcement officers access to his device and had them download the previously deleted video, which would have been just as effective in preventing the alleged private injury without breaking the law.

24

¶ 48    In his motion requesting the affirmative defense, Berumen actually discussed this viable and legal alternative that he didn't pursue, without concluding it was futile.  Berumen explained as follows:

> It would have been illegal for anyone else, including an attorney, to possess the second phone containing the video at issue.  Pursuant to [section] 16-9-[6]01(2)[, C.R.S. 2025,] all sexually exploitative material shall remain in the care, custody, and control of either the prosecution, *a law enforcement agency*, or the court.

(Emphasis added.)

¶ 49    Thus, as Berumen alluded to in his own motion, he could have alerted law enforcement officers to the existence of the video (which he had already deleted by the time of his interview starting late on February 23) and had them retrieve and retain it — instead of redownloading it himself.  *See* § 16-9-601(2) (providing that "in a criminal proceeding, all sexually exploitative material shall remain in the care, custody, and control of either the prosecution, a law enforcement agency, or the court").  But he didn't.  Nor does he explain why this option would have been "futile," as *Andrews* requires.

25

¶ 50    To be sure, this course of conduct may not have been a *desirable* option for Berumen, as it would have exposed that he lied to Detective Hiatt when he told him that he hadn't had sex with K.D. But the *undesirability* of this alternative, legal course of conduct doesn't render it futile or nonviable. Indeed, the undesirability of pursuing this legal option was due almost entirely to Berumen's choice to give a false statement to Detective Hiatt. And because Berumen's offer of proof and testimony at trial made it clear that he had a viable legal alternative available to him, we conclude that the trial court properly determined that he was foreclosed from asserting the choice of evils defense.

¶ 51    In any event, even if the trial court erred by refusing the choice of evils instruction, which it didn't, the error would have been harmless beyond a reasonable doubt, which is where we turn next.

### b.    Harmless Error

¶ 52    As previously discussed, the mistake of age defense applied to all three felony charges — including the possession of a video charge. Because Detective Hiatt told Berumen K.D.'s age during his interview, the mistake of age defense was only available to him for his conduct *before* his interview with Detective Hiatt.

¶ 53    And Berumen requested the choice of evils defense only for the possession of a video charge.  Berumen further limited the availability of this defense by specifically requesting it for his act of redownloading the videos — *after* his interview with Detective Hiatt — on or about February 26, 2021.

¶ 54    To secure an acquittal on the possession of a video charge, the jury would have needed to be persuaded by *both* the mistake of age *and* choice of evils defenses.  This is so because, as explained before, Berumen's possession of the video occurred at two discreet times — once before Detective Hiatt told Berumen K.D.'s age, and again after.

¶ 55    But we know that the jury rejected Berumen's mistake of age defense.  This is so because mistake of age was a complete defense to both the performance charge and the intent to distribute charge, and the jury convicted Berumen on both charges.  And for Berumen to be acquitted of the possession of a video charge, he would have needed to prevail with respect to *both* the choice of evils defense *and* the mistake of age defense.  Because we know the jury rejected his mistake of age defense, any error in refusing to give the choice

27

of evils defense instruction was necessarily harmless beyond a reasonable doubt.

¶ 56 Put differently, had the jury been given a choice of evils instruction and had it been persuaded by that instruction, the defense would have only excused the possession of the video *after* Berumen's interview with Detective Hiatt, as that is when the fear of false arrest arose. But to be acquitted of the possession of a video charge, the jury would have also had to be persuaded by the mistake of age defense; we know it wasn't based on its guilty verdicts on the performance and intent to distribute charges. Thus, we can say, beyond any reasonable doubt, that any erroneous failure to give the choice of evils instruction doesn't undermine our confidence in the jury's verdict. *Cf. People v. Linares-Guzman*, 195 P.3d 1130, 1134-35 (Colo. App. 2008) (looking to jury's verdict on a separate charge to conclude that any instructional error was not plain error because there was no reasonable possibility that such error contributed to the defendant's conviction).

¶ 57 Based on the totality of the jury's verdict for all the sexual exploitation of a child charges, we know that the jury rejected, beyond a reasonable doubt, that Berumen was operating under a

28

mistake of age at the time he made the videos and up until Detective Hiatt told him K.D.'s age. Even assuming Berumen could have been entitled to the choice of evils instruction for the time after Detective Hiatt told him K.D.'s age, failure to give that instruction couldn't have contributed to his conviction on the possession of a video charge — the only charge to which Berumen contends choice of evils applied.

¶ 58 Accordingly, even if there was error in refusing the requested instruction, any error was harmless beyond a reasonable doubt, so there is no basis for reversal.

### III. Disposition

¶ 59 For the reasons set forth above, we affirm the judgment of conviction.

JUDGE SULLIVAN concurs.

JUDGE BERGER concurs in part and dissents in part.

JUDGE BERGER, concurring in part and dissenting in part.

I agree with almost all of the majority's opinion. Specifically, I agree with the majority's rejection of the choice of evils defense tendered by defendant, Ever Ulises Berumen. I also agree, with one exception, that Berumen's constitutional challenges to the beyond a reasonable doubt instruction fail. But I do not agree that the "real possibility" language in the 2022 model jury instruction that the trial court gave to the jury in Berumen's trial was constitutionally acceptable. It does not accurately define reasonable doubt and lowers the prosecution's burden of proof. Use of a reasonable doubt instruction that incorrectly defines reasonable doubt and lowers the prosecution's burden of proof is structural error. Therefore, Berumen's convictions should be reversed and the case remanded for a new trial before a properly instructed jury.

As the majority recognizes, the Due Process Clause of the United States Constitution "guarantees to the criminal defendant that the prosecution must prove every factual element necessary to constitute the crime charged beyond a reasonable doubt before the defendant may be convicted and subjected to punishment." *Vega v. People*, 893 P.2d 107, 111 (Colo. 1995). While trial courts are

required to properly instruct the jury on the reasonable doubt standard, they have flexibility in defining it.  *Johnson v. People*, 2019 CO 17, ¶ 10.  But "[i]nstructions that lower the prosecution's burden of proof below the reasonable doubt standard constitute structural error and require automatic reversal."  *Tibbels v. People*, 2022 CO 1, ¶ 22.

¶ 62     To determine if a trial court lowered the reasonable doubt burden, we look at the record as a whole and "ask whether there is a reasonable likelihood the jury applied the instructions in an unconstitutional manner."  *People v. Garcia*, 2021 COA 80, ¶ 26, *aff'd*, 2023 CO 30.

¶ 63     The 2022 model jury instruction on reasonable doubt, which the trial court gave to the jury here, reads as follows[1]:

> [1] Every person charged with a crime is presumed innocent.  This presumption of innocence remains with the defendant throughout the trial and should be given effect by you unless, after considering all the evidence, you are convinced that the defendant is guilty beyond a reasonable doubt.
>
> [2] The burden of proof in this case is upon the prosecution.  The prosecution must prove to

---

[1] The 2022 model instruction does not number the paragraphs.  I have added paragraph numbers to facilitate my analysis.

the satisfaction of the jury beyond a reasonable doubt the existence of each and every element necessary to constitute the crime charged. This burden requires more than proof that something is highly probable, but it does not require proof with absolute certainty.

[3] Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt. If you are firmly convinced of the defendant's guilt, then the prosecution has proven the crime charged beyond a reasonable doubt. *But if you think there is a real possibility that the defendant is not guilty, then the prosecution has failed to prove the crime charged beyond a reasonable doubt.*

[4] After considering all the evidence, if you decide the prosecution has proven each of the elements of a crime charged beyond a reasonable doubt, you should find the defendant guilty of that crime.

[5] After considering all the evidence, if you decide the prosecution has failed to prove any one or more of the elements of a crime charged beyond a reasonable doubt, you should find the defendant not guilty of that crime.

COLJI-Crim. E:03 (2022) (emphasis added).

¶ 64    The problem is the italicized language of Paragraph 3. After

properly defining reasonable doubt as "proof that leaves you firmly

convinced of the defendant's guilt," the instruction proceeds to

32

introduce a new, undefined concept — a "real possibility" that the defendant is not guilty of the crime charged.

¶ 65    The distinction between being "guilty" or "not guilty" in the criminal law context is a legal construct; it is not the way human beings ordinarily think.  *Cf.* Lorraine Hope et al., *A Third Verdict Option: Exploring the Impact of the Not Proven Verdict on Mock Juror Decision Making*, 32 Law & Hum. Behav. 241, 241 (2008) (jurors in high profile cases, frustrated by the simple dichotomy between "guilty" and "not guilty," have "expressed a preference for an alternative verdict which more accurately reflects their view that the defendant is indeed culpable, but that the prosecution has not met the legal standards necessary to convict").  Outside of the legal context, most people who are trying to decide (for whatever reason) if another person committed a crime consider the information known to them and conclude that the person either did the crime at issue, probably did it, probably didn't do it, or surely didn't do it.

¶ 66    The meaning of a "real possibility that the defendant is not guilty" is unclear.  Does the real possibility refer to the possibility that the defendant is actually innocent or does the real possibility import the legal concept of reasonable doubt?  If the former, I think

33

the phrase clearly violates the constitutional commands regarding allocation of the burden of proof and presumption of innocence. The jury must, of course, acquit if it believes that there is a "real possibility" that the defendant is actually innocent of the charged crime because the prosecution has not met its burden to prove every element beyond a reasonable doubt.[2]  But if the latter definition applies, and "real possibility" embeds the beyond a reasonable doubt standard, the rephrasing only invites more confusion surrounding the legal standard.

---

[2] In *People v. Schlehuber*, 2025 COA 50, the division concluded that the "real possibility" phrase does not violate the defendant's constitutional rights.  I agree that, in the abstract, the "real possibility" phrase is permissible to attempt to define *when* the prosecution has not proved the defendant guilty beyond a reasonable doubt.  The *Schlehuber* court also rejected the defendant's claim that the "real possibility" phrase shifts the burden of proof.  *Id.* at ¶ 34.  In so doing, the division said, "Nothing in that phrase suggests that the defendant must be 'the source of the "real possibility."'"  *Id.* (citation omitted).  I agree that the phrase is not invalid because it suggests that the defendant must be the source of the real possibility.  But that analysis does not address my point — that a reasonable juror could conclude that the *only* permissible way to acquit the defendant is to conclude that there is a "real possibility" that the defendant is not guilty.  For the reasons I explain in the text, that is an incorrect statement of the law and violates constitutional guarantees.

¶ 67    Apart from the uncertainty regarding the meaning of a "real possibility" that the defendant is not guilty (uncertainty that has constitutional ramifications, as discussed above), I fear a jury could read the challenged sentence to mean that it may acquit *only* if it thinks there is a real possibility that the defendant is not guilty (whatever not guilty means).  Such a reading offends the bedrock principles that the prosecution always has the burden to prove guilt beyond a reasonable doubt, *Pettigrew v. People*, 2022 CO 2, ¶ 34, and that the presumption of innocence continues until a properly instructed jury finds the defendant guilty beyond a reasonable doubt, *People v. Ray*, 2025 CO 42M, ¶ 144.

¶ 68    It is an incorrect statement of the law to say that a jury may acquit *only* if there is a real possibility that the defendant is not guilty.  Juries may acquit on many permissible bases, including that (1) there is no evidence of guilt; (2) while there is some evidence of guilt, the prosecution has not presented proof establishing guilt beyond a reasonable doubt; or (3) the prosecution has not disproved beyond a reasonable doubt any affirmative defense to which the

defendant was entitled.[3]  A "real possibility" that the defendant is not guilty is only one of many permissible grounds to acquit.

¶ 69     Requiring the jury to conclude that there is a "real possibility" that the defendant is not guilty before returning a not guilty verdict also lowers the prosecution's burden of proof.  It suggests that the defendant is guilty unless there is a real possibility that he is not guilty.  However, a defendant has no obligation to prove that he is not guilty or even that there is a real possibility that he is not guilty.

¶ 70     I recognize that we are required to read a jury instruction as a whole and not focus on only specific words or sentences.  And to determine if an instruction impermissibly lowered the reasonable doubt burden, we must look at the record as a whole and "ask whether there is a reasonable likelihood the jury applied the instructions in an unconstitutional manner."  *Garcia*, ¶ 26.  I acknowledge that reading the challenged sentence in context makes the question closer, but I still think, when considering the

---

[3] I do not include or address the power of a jury to acquit based on the doctrine of jury nullification.  *See People v. Scott*, 2021 COA 71, ¶ 1.

overriding importance of a proper definition of reasonable doubt, the instruction is constitutionally infirm.

¶ 71   I suspect that in many cases (surely not all) in which a jury acquits the defendant, the jury thinks that the defendant committed the charged crime but that it had to acquit because the prosecution had not proved commission of the crime beyond a reasonable doubt. In such a case, the jury acquits not because it believed there was a "real possibility" that the defendant was not guilty, but rather because the presented proof did not meet the legal standard.

¶ 72   Consider the facts of this case. Apart from the affirmative defense of choice of evils, which both the trial court and the majority rejected (correctly in my view), there was only one material factual issue before the jury: Did Berumen know that the victim was under the age of eighteen? Berumen's knowledge that the victim was under the age of eighteen was an element of all three of the sexual exploitation of a child charges.

¶ 73   For the first and second counts of sexual exploitation of a child, the evidence on this critical point was thin. No witness testified that anyone told Berumen the victim was underage before

37

the alleged crimes were committed. While Berumen knew that the victim was a high school student, that hardly is dispositive. Nor is the victim's appearance. So the jury likely struggled with that required element.

¶ 74 In doing so, it is certainly reasonable to infer that the jurors consulted the jury instruction that defined reasonable doubt and read the sentence indicating they should acquit Berumen if they thought that there was a real possibility that he was not guilty. If the jury believed that Berumen had committed the crime but did not think the prosecution had presented sufficient evidence on all elements, the risk of conviction despite the lack of evidence is a risk the Constitution protects against.

¶ 75 In my view, there simply is too much risk that the jurors convicted Berumen, not because they found that the prosecution had proved every element of the charged crimes beyond a reasonable doubt, but because they did not believe that there was a real possibility that he was not guilty.

¶ 76 Even if the majority is correct and, read in context, the 2022 model instruction did not limit the jury's ability to find Berumen not guilty only if the jury thought that there was a real possibility

that Berumen was not guilty, it is unwise to continue to use a model instruction that is reasonably susceptible of that meaning.

¶ 77    I fear that the majority's opinion, which essentially blesses the 2022 model instruction (as revised for other reasons by the 2023 model instruction), will lead trial judges to continue to use the 2022 model instruction.[4]  Its continued use risks invalidating countless convictions rendered after the announcement of this opinion and before the supreme court addresses these questions in *Teran-Sanchez v. People*, (Colo. No. 25SC148, Sept. 2, 2025) (unpublished order), in which the supreme court has granted certiorari.

¶ 78    At a minimum, the majority should recognize the potential problems the 2022 model instruction creates and explain that trial

---

[4] The majority says that the trial court did not "reversibly err[]" when it used the 2022 model instruction.  *Supra* ¶ 14.  "Reversibly err" is a loaded term that could mean the court thinks there was error, but the error was harmless.  Regardless of what the majority means, I think trial judges are likely to construe the majority opinion as a blessing of the 2022 model instruction.  For the reasons discussed in the text, that would be very unfortunate.

courts retain discretion to depart from these problematic portions of the pattern instruction.[5]

¶ 79　　For these reasons, I respectfully dissent from that portion of the majority's opinion that upholds the challenged sentence from constitutional attack.  Because the jury was incorrectly instructed on the bedrock principle of reasonable doubt, structural error occurred and Berumen is entitled to a reversal of his convictions and a new trial before a properly instructed jury.

---

[5] To my knowledge, no Colorado court has held that the prior model jury instruction, COLJI-Crim. E:03 (2021), violated a defendant's rights, so it is almost inconceivable that if a trial court uses that instruction, instead of the 2022 version, structural error would result.  To the contrary, courts in Colorado, and a multitude of other jurisdictions, have repeatedly held that the prior model instruction and its language properly protect a defendant's constitutional rights.  *See, e.g., Victor v. Nebraska*, 511 U.S. 1, 18-23 (1994); *People v. Robles*, 302 P.3d 269, 280-81 (Colo. App. 2011) (collecting cases), *aff'd on other grounds*, 2013 CO 24; *People v. Alvarado-Juarez*, 252 P.3d 1135, 1137 (Colo. App. 2010); *People v. Robb*, 215 P.3d 1253, 1262-63 (Colo. App. 2009); *see also Tibbels v. People*, 2022 CO 1, ¶ 25 (urging courts to adhere to "long-established pattern instructions").