24CA0165 Peo v Warren 03-26-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA0165
El Paso County District Court No. 22CR1783
Honorable Laura N. Findorff, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Howard Glen Warren Jr.,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE JOHNSON
Pawar and Gomez, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced March 26, 2026

Philip J. Weiser, Attorney General, Jillian J. Price, Deputy Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Jeffrey A. Wermer, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Howard Glen Warren, Jr. (Warren), appeals the judgment of conviction entered upon a jury verdict finding him guilty of robbery.  He contends that the district court reversibly erred by (1) denying his challenge for cause to a prospective juror and (2) giving the jury a deficient instruction on the concepts of the presumption of innocence, the burden of proof, and reasonable doubt.  We disagree and, therefore, affirm.

## I.     Background

¶ 2     Warren was charged with aggravated robbery and second degree assault in connection with taking a cell phone from his cousin.  The jury acquitted him of those charges and of the lesser offenses of theft and third degree assault but convicted him of the lesser offense of simple robbery.  Warren was subsequently adjudicated a habitual criminal and sentenced by the court to twenty-four years in the custody of the Department of Corrections.

## II.     Challenge for Cause

¶ 3     Warren asserts that the district court erroneously denied his challenge for cause to a prospective juror who expressed an inability to apply the presumption of innocence.  And, because that

juror — Juror K — ultimately sat on his jury, he argues that the error is structural and requires automatic reversal. We disagree.

## A. Additional Facts

¶ 4     During voir dire, defense counsel asked the prospective jurors if they believed Warren must have done something wrong because he was being tried on criminal charges. After some discussion, counsel then "want[ed] to ask [the] question just a little differently":

> I want you all to think about a scale, one to
> ten, and the only information you have is
> there's a defendant at that table and
> presumably somebody investigated it, the
> police investigated this, the D.A. decided to
> move forward prosecuting this case. Ten being
> 100 percent guilty, one being 100 percent
> innocent, where would you be?

¶ 5     One prospective juror responded, "I guess I would kind of be right there in the middle, you know, not completely innocent, not completely guilty." Defense counsel then held the following colloquy with Juror K:

> [Defense counsel]: Okay. And I believe I saw
> your hand, [Juror K]?
>
> JUROR [K]: Yes, sir.
>
> [Defense counsel]: What are your thoughts on
> that?
>
> JUROR [K]: Probably right in the middle.

2

> [Defense counsel]: So when we're talking about one being 100 percent innocent, ten being 100 percent guilty, who else agrees with the individuals we just heard from?

Other prospective jurors said that they agreed with the above comments because (1) "[y]ou . . . don't know any of the facts yet. And also, like, they could be wrong on either side"; and (2) "I'd be in the middle as well, because without the facts we can't really decide one way or the other."

¶ 6 After additional discussions, defense counsel recognized that "[he] may not have explained [the scale] very well" and that "[he] ha[d] a tendency to do that sometimes and get tripped up." Counsel told the prospective jurors that the law required them to be at a "one" on the scale and asked the jurors for their thoughts on the "modified definition of knowing the law is a one."

¶ 7 After the clarification, one prospective juror noted that "maybe [he was] thinking of the scale a little bit wrong." Another prospective juror stated that, due to his "mathematical data kind of background," he "like[d] to be more in the middle," but that he did not "like to be biased towards one side or the other until [he] ha[d] . . . the data to be able to process it and see where [his] analysis of

the data would end up." A different prospective juror had similar thoughts: "I look at the scale as a mathematical thing; you're not on the innocent side, but you're not on the guilty side."

¶ 8    Defense counsel again conceded that he was explaining the law in a "weird way" but asked those prospective jurors who had indicated that they were not at a one on the scale if they "ha[d] any doubts that they could put all of what we just talked about aside and guarantee a one once they're given that law." The transcript does not reflect that Juror K was among the prospective jurors who voiced such doubts.

¶ 9    Defense counsel asserted twenty-one challenges for cause, and his request to disqualify some of those prospective jurors was based, in part, on their indication that they could not "start at a one" on his scale. In response, the prosecutor argued that the scale was confusing and that he believed the prospective jurors misunderstood the scale to mean that a number in the middle meant they were unbiased.

¶ 10    The district court agreed with the prosecutor that the scale was confusing and stated that it was disinclined to "grant a challenge to somebody when we're operating off of this kind of

nuanced scale." The court further noted the prospective jurors' misunderstanding of the exercise: "And I'm not sure that all of the jurors even understood the scale as to how — in fact, I know at least a couple of them did not understand it, because they were wanting to put themselves in the middle to show they were not biased."

¶ 11    In denying one of the challenges for cause, the district court said that it was "usually pretty good about writing down notes if somebody is taking a strong stance on . . . presumption of innocence . . . , and [it did not] have that specific information as to [the challenged juror]." The court then took a similar view regarding defense counsel's challenge to Juror K:

> [Defense counsel]: Next, we would request to strike Juror [K], Judge. He actually did put himself at 50/50 guilt or innocence starting out, which is not presuming Mr. Warren innocent, which does not comport with the rule of law.
>
> THE COURT: Well, I have no notes indicating anywhere that he said he was at 50/50, and the Court notes that he never indicated that he could not follow the law as instructed. So the Court is going to deny the challenge as to [Juror K].

¶ 12    The district court granted eleven of defense counsel's

challenges for cause and moved on to peremptory challenges.

Defense counsel exhausted all six of his peremptory challenges, and

Juror K was seated on the jury.

B.    Standard of Review and Applicable Law

¶ 13    If a court erroneously denies a challenge for cause and the

challenged juror sits on the jury, "the defendant's right to an

impartial jury is violated, the error is structural, and reversal is

required." *People v. Abu-Nantambu-El*, 2019 CO 106, ¶ 30.

¶ 14    The United States and Colorado Constitutions guarantee a

defendant the right to a trial by a fair and impartial jury. *See id.* at

¶ 14; *Morrison v. People*, 19 P.3d 668, 672 (Colo. 2000).  "A

defendant's right to an impartial jury is violated if the trial court

fails to remove a juror biased against the defendant." *Morrison*, 19

P.3d at 672; *see Abu-Nantambu-El*, ¶ 14.

¶ 15    As relevant here, a court must sustain a challenge for cause

when there exists "a state of mind in a juror manifesting a bias for

or against the defendant, or for or against the prosecution, or the

acknowledgement of a previously formed or expressed opinion

regarding the guilt or innocence of the defendant."  Crim. P.

24(b)(1)(X); *see also* § 16-10-103(1)(j), C.R.S. 2025 (A court must sustain a challenge if the "juror evinc[es] enmity or bias toward the defendant or the state."). But the court need not disqualify the juror if it "is satisfied that the juror will render an impartial verdict based solely upon the evidence and the instructions of the court." Crim. P. 24(b)(1)(X); *see* § 16-10-103(1)(j). Specifically, the court must grant the challenge for cause "if a prospective juror is unwilling or unable to accept the basic principles of criminal law and to render a fair and impartial verdict based upon the evidence admitted at trial and the court's instructions." *Morrison*, 19 P.3d at 672.

¶ 16      The question whether a prospective juror "cannot judge the matter fairly and impartially is necessarily a matter involving an exercise of discretion on the part of the trial court and therefore a range of permissible judgments about the ability and willingness of that prospective juror." *Vigil v. People*, 2019 CO 105, ¶ 14. "We accord great deference to the trial court's handling of challenges for cause because such decisions turn on an assessment of the juror's credibility, demeanor, and sincerity in explaining [their] state of mind." *Morrison*, 19 P.3d at 672. Such assessments are subject to

a "very high standard of review," and, accordingly, a court will be deemed to have abused its discretion only if its ruling is manifestly arbitrary, unreasonable, or unfair. *Vigil*, ¶ 14 (quoting *Carrillo v. People*, 974 P.2d 478, 485-86 (Colo. 1999)). "In determining whether a trial court has abused its discretion, reviewing courts have . . . been admonished from considering merely whether they would have reached the same conclusion and, instead, must affirm as long as the trial court's decision fell within a range of reasonable options." *Id.*

## C. Analysis

¶ 17    On the above record, we are not convinced that the district court's denial of the challenge for cause to Juror K was manifestly arbitrary, unreasonable, or unfair. *See People v. Ambrose*, 2021 COA 62, ¶ 29 ("We will overturn a trial court's ruling on a challenge for cause only upon an affirmative showing that the court abused its discretion; that is, only if there is no evidence in the record to support the ruling." (citations omitted)).

¶ 18    The record demonstrates that defense counsel's "scale" was a confusing attempt to learn the prospective jurors' thoughts on the presumption of innocence. Importantly, the jurors' confusion

8

appears to have focused on the belief that the middle of the scale —
Juror K's stated position — reflected a balanced, unbiased view on
guilt or innocence. *See People v. Clemens*, 2017 CO 89, ¶ 16 ("The
purpose of challenges for cause . . . is to remove jurors who have
shown bias or enmity toward one of the parties, not jurors who
simply enter the courtroom with a misunderstanding of the law.").

¶ 19     Juror K's "right in the middle" statement — the basis for the
challenge for cause — preceded defense counsel's attempted
clarification of the scale, which did not appear to abate the jurors'
confusion based on the voir dire colloquies. Even so, the record
does not indicate that, after counsel clarified the scale and asked
for the prospective jurors' thoughts on the "modified definition,"
Juror K voiced any doubts about his ability to apply the
presumption of innocence. *Cf. id.* at ¶ 19 ("[A] prospective juror's
silence in response to rehabilitative questioning constitutes
evidence that the juror has been rehabilitated when the context of
that silence indicates that the juror will render an impartial verdict
according to the law and the evidence submitted to the jury at the
trial.").

¶ 20    And the record shows that the district court was fully engaged in monitoring the prospective jurors for partiality or bias during voir dire. Indeed, at the conclusion of voir dire, the court asked a prospective juror to clarify his statements regarding the "scale," and the court later sustained a challenge for cause based solely on the court's observations of a prospective juror's body language during questioning. Despite this scrutiny of the jury venire, the court had no such concerns regarding Juror K. *See Morrison*, 19 P.3d at 672 ("The trial court is in a superior position to evaluate [the challenged juror's credibility, demeanor, and sincerity in explaining their state of mind] than a reviewing court, which has access only to a cold record for its determination.").

¶ 21    Viewing Juror K's "right in the middle" statement in the context of the entire voir dire, we conclude that the district court did not err by rejecting defense counsel's characterization of the statement regarding counsel's ill-defined "scale" as being "50/50" on guilt or innocence. *See People v. Young*, 16 P.3d 821, 824 (Colo. 2001) ("An appellate court must review the entire voir dire at issue when reviewing a trial court's ruling on a challenge for cause in order to place the juror's statement in context."); *see also Carrillo*,

974 P.2d at 488 ("[A]lthough it would have been better practice for the trial judge to question [the prospective juror] in order to fully explore his feelings, we do not find that the record of [the juror's] answers taken as a whole demonstrates that he had a state of mind evincing bias against [the defendant]."). Again, Juror K's lone statement was made at a time when the prospective jurors exhibited confusion regarding the "scale," and Juror K did not voice any doubts about his ability to apply the law after counsel's attempted clarification. *See Ambrose*, ¶ 33 ("The court must examine the juror's statements or silence in light of the totality of the circumstances.").

¶ 22    We are further persuaded that this record supports the court's finding that there was no reason to believe Juror K could not follow the law. *See id.* at ¶ 36 (The court did not err by denying a challenge for cause based on the prospective juror's initial indication of partiality because the absence of further questioning regarding the juror's ability to be fair and impartial, "when considered with the absence of raised hands to the prosecutor's questions about the panel's ability to be fair and impartial, leaves a record containing no evidence that [the challenged juror] was

11

unable to be fair and impartial, or that she would be unable to follow the law."); *see also Clemens*, ¶ 15 ("[I]f a court is satisfied that a challenged juror will render a fair and impartial verdict according to the law and the evidence presented at trial, then the court should not dismiss that juror for cause."); *People v. Vigil*, 2015 COA 88M, ¶ 10 ("[U]nder the abuse of discretion standard, the question for us is not whether the record would have supported a decision to grant the challenge for cause or whether we would have granted the challenge. Rather, the question presented is whether the record *compelled* the trial court to grant the challenge." (citations omitted)), *aff'd*, 2019 CO 105.

### III. Jury Instruction Challenge

¶ 23 Next, Warren contends that the new model jury instruction on the presumption of innocence lowered the burden of proof. We disagree.

### A. Standard of Review and Applicable Law

¶ 24 We review de novo the question of whether a court accurately instructed the jury on the law. *Tibbels v. People*, 2022 CO 1, ¶ 22. "Instructions that lower the prosecution's burden of proof below the

reasonable doubt standard constitute structural error and require automatic reversal." *Id.*

¶ 25    A court has a duty to instruct the jury on all matters of law applicable to the case. *Roberts v. People*, 2017 CO 76, ¶ 18. "As long as the instruction properly informs the jury of the law, a trial court has broad discretion to determine the form and style of jury instructions." *McDonald v. People*, 2021 CO 64, ¶ 54 (quoting *Day v. Johnson*, 255 P.3d 1064, 1067 (Colo. 2011)).

## B.    Analysis

¶ 26    In 2022, the Colorado Model Criminal Jury Instruction defining the concepts of the presumption of innocence, the burden of proof, and reasonable doubt was substantially revised to read as follows:

> Every person charged with a crime is presumed innocent. This presumption of innocence remains with the defendant throughout the trial and should be given effect by you unless, after considering all the evidence, you are convinced that the defendant is guilty beyond a reasonable doubt.
>
> The burden of proof in this case is upon the prosecution. The prosecution must prove to the satisfaction of the jury beyond a reasonable doubt the existence of each and every element necessary to constitute the

13

crime charged.  This burden requires more than proof that something is highly probable, but it does not require proof with absolute certainty.

Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt.  If you are firmly convinced of the defendant's guilt, then the prosecution has proven the crime charged beyond a reasonable doubt.  But if you think there is a real possibility that the defendant is not guilty, then the prosecution has failed to prove the crime charged beyond a reasonable doubt.

After considering all the evidence, if you decide the prosecution has proven each of the elements of a crime charged beyond a reasonable doubt, you should find the defendant guilty of that crime.

After considering all the evidence, if you decide the prosecution has failed to prove any one or more of the elements of a crime charged beyond a reasonable doubt, you should find the defendant not guilty of that crime.

COLJI-Crim. E:03 & cmts. 1, 7 (2022).

¶ 27    Warren objected to the district court's giving of the 2022 model instruction, arguing that the prior version's language was an accurate and accepted representation of the law and that the revised language impermissibly lowered the prosecution's burden of proof, shifted the burden to him, and undermined the presumption

of innocence. The court overruled the objection and gave the 2022 model instruction to the jurors.

¶ 28    On appeal, Warren raises multiple challenges to the court's decision to give the 2022 model instruction:

1. The language "real possibility that the defendant is not guilty" required the jurors to possess a higher quantum of doubt than is needed for reasonable doubt and, consequently, lowered the prosecution's burden of proof.

2. The language "firmly convinced of the defendant's guilt" allowed the jurors to apply a lower standard than is required for the beyond a reasonable doubt standard.

3. The 2022 model instruction omitted the judicially-approved "hesitate to act" language, which was included in the pre-2022 version of Instruction E:03, *see* COLJI-Crim. E:03 (2021).

4. The 2022 model instruction did not inform the jurors that, when determining whether the prosecution had proved guilt beyond a reasonable doubt, they could consider a "lack of evidence," which was included in the pre-2022 version of Instruction E:03, was omitted from the 2022 version, and was

added back to the model instructional language in 2023, *see* COLJI-Crim. E:03 (2021); COLJI-Crim. E:03 & cmt. 8 (2023).

5. The cumulative effect of the preceding errors lowered the burden of proof, shifted the burden to the defense, and undermined the presumption of innocence.

¶ 29 Warren recognizes that other divisions of this court have already addressed and rejected these challenges to the 2022 model instruction, but he asks us to depart from their reasoning based on previously unconsidered extra-jurisdictional authority. We decline Warren's invitation to do so.

¶ 30 Prior divisions of this court have considered similar challenges to the 2022 model instruction and concluded that those arguments did not establish that the court reversibly erred in giving the model instruction. *See People v. Berumen*, 2025 COA 93, ¶¶ 1, 14-33 (rejecting the defendant's challenges to the inclusion of the "firmly convinced" and "real possibility" instructional language and to the omission of the "lack of evidence" instructional language); *People v. Schlehuber*, 2025 COA 50, ¶¶ 1-2, 7-35 (rejecting the defendant's challenges to the inclusion of the "firmly convinced" and "real possibility" instructional language and to the omission of the "lack

16

of evidence" and "hesitate to act" instructional language, and rejecting the defendant's assertion that, if not individually problematic, the cumulative effect of the errors impermissibly lowered or shifted the burden of proof or undercut the presumption of innocence); *People v. Melara*, 2025 COA 48, ¶¶ 10-32 (concluding that, while a court should inform the jury that it may consider the "lack of evidence," the omission of that language did not impermissibly lower the burden of proof); *see also Teran-Sanchez v. People*, (Colo. No. 25SC148, Sept. 2, 2025) (unpublished order) (granting a writ of certiorari to address "[w]hether the trial court's jury instruction on burden of proof and reasonable doubt, based on the 2023 Model Criminal Jury Instruction . . . violated petitioner's federal and constitutional rights to due process and a fair trial"). We are not persuaded that the additional extra-jurisdictional authority presented in Warren's opening brief warrants a different result.

¶ 31    Thus, for the reasons set forth in *Berumen, Schlehuber*, and *Melara*, we conclude that the district court did not err when giving the 2022 model instruction.

## IV. Conclusion

¶ 32 The judgment is affirmed.

JUDGE PAWAR and JUDGE GOMEZ concur.